**Walter A. REED, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant.**

**Civ. A. No. W–4904.**

United States District Court,
D. Kansas.

Sept. 23, 1974.

Robert E. Southern, Great Bend, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., and Benjamin L. Burgess, Asst. U. S. Atty., Wichita, Kan., and Caroline McB. French, Deputy Regional Atty., Paul P. Cacioppo, Regional Atty., Region VII, Dept. of H. E. W., Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER

WESLEY E. BROWN, Chief Judge.

This is a review of a final decision of the defendant Secretary's determination that claimant, Walter A. Reed, did not continue to suffer from a "disability" after February 8, 1972, within the meaining of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

The administrative record before us discloses that Reed was born in 1914 and was 55 at the time when he received serious bodily injury. He has a tenth grade education and has attended a course on how to mix concrete. His employment has been varied. He has been

a mechanic, an operator of a ditching machine, a truck driver, an oil field driller, a manager and operator of a ready mix cement plant and sand pit, and an oil and gas well tube and casing tester. He is 5'6" tall and weighs 122 pounds. He is married and has seven children, with six living at home.

On September 8, 1970, Reed was seriously injured when a propane transport truck which he was driving overturned and exploded. During the course of the accident, Reed was thrown from the truck and struck in the back by the propane tank. He was admitted to the Rice County Hospital in Kansas for emergency treatment of his injuries diagnosed as being "Multiple rib fractures bilaterally (all ribs on both sides some fractured in two places), tension hemopneumothorax on the left, pneumomediastinum, subcultaneous emphysema bilateral, fracture of the left scapula, frontal laceration of scalp four inches long, multiple contusion, contusion of left knee, first degree burns of the face and neck, [and] traumatic shock." [Tr. 88.] The treatment consisted of a tracheostomy, the insertion of tubes into the lungs and the application of external traction to the rib cage. On October 5, 1970, with the tracheostomy practically healed, Reed was released from the hospital to convalesce at home.

While at home, Reed's injuries were complicated with a draining sinus developing on his chest. The sinus did not respond to medication. On February 16 and March 10, 1971, Dr. Collins filed reports in which he stated that it was "undetermined" how long Reed would be continuously totally disabled. [Tr. 82 and 83.] He examined Reed and determined that an infected bone was causing the sinus.

The record contains a purported report of a telephone conversation with Dr. Grimes, Reed's attending physician, on March 16, 1971, in which Grimes allegedly stated that Reed was poorly motivated and should be able to return to work before September 1971. This report, in our opinion, is of little probative value for it is double hearsay and, being a prediction on the date Reed should return to work, was later proven wrong as we shall develop below.

On March 30, 1971, Reed underwent surgery during which one infected rib and three infected cartilages were removed. This operation did not remedy the ailment for in a short period of time after the operation another draining sinus developed on his chest.

On July 26, 1971, Reed was again examined by Dr. Grimes. After referring to Reed's operation in March 1971 Dr. Grimes related his findings concerning primarily Reed's chest injuries. Grimes concluded,

"This patient is probably disabled from doing his usual pre-accident type work; however, this examiner feels that he probably could be employed gainfully in a sedentary type job. He mosted [sic] likely is limited in this type of employment unless he could be trained into some job which would fit his physical ability." [Tr. 87.]

This conclusion was apparently reached without an examination of Reed's spine which was later determined to be affected by arthritis.

On September 14, 1971, an administrative hearing was held to determine if Reed suffered from a disability within the meaning of the Social Security Act. The Administrative Law Judge [ALJ] concluded that although Reed's impairments prevent him from engaging in any heavy manual labor, they were not so severe as to prevent him from doing sedentary type work. On that basis, the ALJ found that Reed was not disabled. An administrative appeal was taken by Reed.

While the administrative appeal was pending, Reed underwent another operation on December 12, 1971, during which the draining sinus tract was excised and an infected portion of his sternum was removed.

The denial of benefits was affirmed by the Appeals Council on June 6, 1972. Thereafter, on August 7, 1972, Reed

filed this instant action to review the final decision of the Secretary. Upon the motion of the Secretary, the matter was remanded to the Secretary on February 13, 1973, for further proceedings with the instructions that any additional findings of fact and decisions were to be filed with the Court.

In February 1973 Reed was hospitalized for treatment of a hiatus hernia or rupture of the diaphragm and diabetes.

On May 25, 1973, Reed was examined by Dr. Irvin Mattick. An x-ray examination revealed severe trophism and degenerative joint changes of the lumbosacral facets. A lateral view of the lumbar spine showed an old compression fracture of L4 with loss of height of 10 to 15%, anteriorly. There was a severe loss of height of the lumbo-sacral intervertebral space and sclerosis on each side of this narrowed space. There was a left dorsal, right lumbar scoliosis centered at T10 and L3 amounting to about 7° in the case of the lumbar and 10° in the case of the dorsal scoliosis. There were severe degenerative joint changes between C4–C5 and C5–C6 and to a lesser extent between C6–C7. The range of motion of the right shoulder was limited to 60°. There was no further evidence of infection. Mattick's impression was,

"Mr. Reed has good x-ray evidence of arthrosis and degenerative joint changes of the inter-cervical levels . . . and of the lumbo-sacral level and multiple healed rib fractures without definite x-ray evidence of infection at this time.

His subjective complaints of dyspnea and chest pains, I suppose, are compatible with the past history of very severe multiple rib and sternal injuries with once present hemopneumothorax and post-traumatic pneumonia, historically.

It is my impression that he is disabled at this time for [sic] performing heavy farmwork or oil field work or mechanical work. If his work at the time he was injured as a so-called pipe-tester required the use of heavy hammers, wrenches or other tools, which would require considerable force or range of motion of the shoulder or hip muscles or back muscles to perform such pipe-testing work, then, it is perhaps reasonable to assume that he could not do so. There would be no reason why he could not do work not requiring heavy machinery or tool manipulations. In other words he could be a supervisor and stand around and direct other people, if this did not require climbing a lot of ladders or tanks.

I do not feel he is totally disabled in regard to foreman work or supervisory work not requiring heavy use of the arms or very prolonged walking or climbing. * * * The most striking disability really, in my opinion, is in the right shoulder with limitation of motion presumably due to severe soft tissue injury at the time of the original injury, about the shoulder. And it is primarily for this reason that I think he is truly disabled for [sic] using any but very light tools.

I would estimate that at this time he would have about 75% permanent partial loss of use of the body if he were a so-called Workmen's Compensation type case, with respect to heavy type manual labor, such as he performed at the time of the injury." [Tr. 220–221.]

On June 4, 1973, Reed was examined by Dr. Anderson. Anderson concluded that no other surgery was required. He did prescribe medication for chronic arthritis and neuritis in Reed's chest and a tranquilizer.

On October 3, 1973, Reed was examined by Dr. Reiff Brown. The examination disclosed moderate degenerative osteo-arthritis in the cervical and dorsal spine with scoliosis centered at T–5 causing a deformity of the chest cage and painful aggravation of the arthritis. Brown noted that the range of motion was limited in both the mid-dorsal and cervical areas with pain being experienced in both the back and chest after doing any kind of physical work.

Brown rated Reed's disability at 15% based on the changes in the spine and chest.

On November 29, 1973, a second administrative hearing was held in which testimony was taken from Reed, his son, and a vocational expert. The ALJ concluded, after reviewing all the evidence presented at that hearing and at the former hearing, that Reed was "precluded from engaging in any substantial gainful activity from September 8, 1970, through February 8, 1972, but not thereafter." [Tr. 120.] The Appeals Council affirmed on February 22, 1974.

The scope of our review is limited by 42 U.S.C. § 405(g). The Secretary's findings are conclusive if supported by substantial evidence. The Court in Gardner v. Bishop, 362 F.2d 917, 919 (10th Cir. 1966), restated the law with regard to "substantial evidence" as follows:

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [citing Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126]. The Supreme Court has also said ' * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [citing National Labor Relations Board v. Columbian Enameling & Stamping Co., Inc., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660]."

The Court in Hedge v. Richardson, 458 F.2d 1065, 1067 (10th Cir. 1972), further elaborated on the scope of judicial review by stating,

"Judicial review under . . . 42 U.S.C. § 405(g), is limited to an inquiry of whether there is substantial evidence *on the record as a whole* to support the findings of the Secretary." [Emphasis added.]

The Secretary determined that Reed was disabled for a period of 17 months but that after February 8, 1972, he was able to engage in substantial gainful activity. In this regard it is undisputed that Reed has suffered and is suffering from a medically determinable physical impairment; that the impairment has lasted in excess of 12 months; and that the impairment is so severe that Reed is prevented from engaging in his pre-accident employment. Once it is established by the claimant that he can no longer perform his pre-accident type work by reason of such impairment, the burden of proof falls on the Secretary "to go forward with proof of the reasonable availability to [the claimant] of other work for which [he] was suited." Kirby v. Gardner, 369 F.2d 302, 304–305 (10th Cir. 1966); Keating v. Secretary of Health, Education and Welfare of United States, 468 F.2d 788 (10th Cir. 1972). The question presented here, therefore, is whether there is substantial evidence based on the record as a whole to support the Secretary's finding that Reed's impairment did not prevent him from engaging in substantial gainful activity after February 8, 1972.

At the administrative hearing conducted after the remand, Reed testified that since the accident he has not worked nor attempted to obtain employment. At times he can walk as far as 5 to 7 blocks. At other times, the pain is so great that he cannot get out of bed. He stated that on an average day he will get up, shower and shave, and then have to lie down and rest before he can eat breakfast. He does not help with the house and yard work and spends most of his day sitting or lying down. He can drive a car but only for short distances, but there is no medical evidence to support this claim.

A vocational expert, Eudora Goetz, testified with regard to the availability of jobs in the locality of Reed's residence. Her expertise was in the area of obtaining employment for the handicapped. She first testified that considering Reed's age, education, and experience, he could sell oil and gas equipment, be a stock clerk or tool crib attendant, work

in an automotive supply house, or repair and service vending machines. Having been asked to assume the fact that Reed could do only light or sedentary type work, she testified that Reed could work at a bench on a small items assembly line or small items repair shop. She was then asked to consider four different hypothetical situations with regard to Reed's endurance: that he could work only four hours per day; that he could work eight hours per day but had to work in two-hour intervals with an hour of rest in between; that he could only work two hours in the morning and two hours in the afternoon; and that he could only work in one-half hour intervals with a one-half hour rest in between. She testified, in effect, that there were jobs available in the locality regardless of the hours that Reed could work. In the situations where Reed could only work for short periods of time, she testified that he could be paid on piece rate basis. She stated no opinion as to Reed's particular capabilities, other than the transferability of certain general mechanical skills to light or sedentary type jobs.

In addressing himself to the evidence, the ALJ stated:

"The finder of the facts is convinced that the claimant, by reason of his musculoskeletal and digestive system impairments, is precluded from engaging in heavy manual labor, and has been since the date of the accident, September 8, 1970.

"The finder of the facts is further convinced that the claimant was precluded from engaging in any substantial gainful activity from September 8, 1970, through February 8, 1972, but not thereafter.

"Based upon his age, education and vocational experience and background, the claimant has acquired many skills which bear occupationally significant characteristics to light and sedentary types of employment to which they are transferable. The vocational expert who testified herein related many jobs of a light and sedentary nature

which exist in significant numbers in the region in which the claimant lives and in many other regions of the country." [Tr. 120.]

Upon this evidence the ALJ concluded, "5. The claimant was unable to perform any substantial gainful activity from September 8, 1970, through February 8, 1972, and is unable to perform heavy manual labor or work requiring frequent bending, lifting, stooping, or climbing stairs, but he is, and has been, able to function otherwise satisfactorily since February 9, 1972.

"6. Considering the claimant [sic] residual physical capacity and his vocational background, he is able to perform jobs such as bench work repairing and assembling parts, equipment and small motors. He can work in automotive and truck supply houses. He can do light delivery work. He can work in factories of or manufacturing plans as a tool crib attendant. He can function satisfactorily as a foreman or overseer in construction work."

■ It is the function of the Secretary, not the courts, to find the facts. Our function is limited to a review of the record as a whole to determine whether the Secretary's findings are supported by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Gardner v. Bishop, *supra*.

A disability is defined by 42 U.S.C. § 423(d)(1) as being an,

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

Section 423 further provides,

"(2) For the purposes of paragraph (1)(A)—

(A) an individual . . . shall be determined to be under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

Finally, section 423(d)(5) places the burden upon the claimant to establish his disability.

The record discloses that Reed suffers from a medically demonstrable physical impairment, lasting in excess of twelve months, which is so severe that Reed is prevented from engaging in his pre-accident type activities. The burden was then upon the Secretary to come forward with proof that Reed could engage in any other substantial gainful activity, which he did. The medical evidence discloses that Reed is capable of engaging in sedentary type work. The vocational expert testified that, considering Reed's age, education, experience, and his impairments, there were sedentary type jobs available in significant numbers in the region where Reed lives, especially bench type work. Reed, in effect, denied that he could engage in this type of activity; however, the medical evidence indicates that he can engage in such activity.

We conclude, therefore, that there is relevant evidence and reasonable inferences drawn therefrom to show that Reed can engage in sedentary type work and is not disabled within the meaning of the Social Security Act.

There being substantial evidence to support the Secretary's findings,

It is ordered that the Secretary's motion for summary judgment be, and is hereby, granted; that the action be dismissed; and that the Clerk shall enter judgment accordingly.