## CHARLES HOPKINS *v.* MARYLAND INMATE GRIEVANCE COMMISSION

[No. 1290, September Term, 1977.]

*Decided October 10, 1978.*

The cause was argued before MASON, WILNER and COUCH, JJ.

*Richard G. Fishman,* with whom was *Richard L. North* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom was *Francis Bill Burch, Attorney General,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

Charles Hopkins, an inmate at the Maryland Penitentiary, was found guilty by the Adjustment Team [1] of attempted escape and possession of contraband, *i.e.,* hacksaw blades. He was sentenced to one year in isolated confinement for the attempted escape conviction and a term of nine months for the possession of contraband conviction. Pursuant to procedures set out in Maryland Annotated Code, Article 41, Section 204F (d), Hopkins filed a complaint with the Inmate Grievance Commission (the Commission) alleging, among other things, that he did not have a hearing before the Adjustment Team within 72 hours of the alleged institutional infractions as mandated by Division of Correction Rule 105-2 (c) (1):

> "The inmate shall be furnished a written statement of the major infraction with which he is charged. The written statement shall be served to the inmate not later than forty-eight (48) hours after the alleged violation, and the inmate will appear before the Adjustment Team within *seventy-two (72) hours* of the alleged violation unless prevented by exceptional circumstances. The stipulated time excludes Saturdays, Sunday, and holidays." (Emphasis added).

The alleged violations occurred on Wednesday, September 8, 1976. Excluding Saturday, Sunday and Monday, a holiday (Defender's Day) the 72 hour period ended on Tuesday,

---

1. The Adjustment Team is a three member board constituted pursuant to procedures adopted by the Division of Correction to conduct administrative hearings for alleged institutional infractions.

September 14, 1976. The hearing was held on Wednesday, September 15, 1976.

After holding a hearing on this matter, the Commission concluded:

> " . . [T]hat the decision of the Adjustment Team was proper and just, and that the procedural delay was occasioned by exceptional circumstances and not prejudicial to Mr. Hopkins."

In affirming the Order of the Commission, the Judge of the Baltimore City Court, in his oral opinion, stated:

> " . . . True, the regulation calls for hearing within seventy-two hours and the inmate is entitled to rely upon that and entitled to expect a hearing within that period, I do not consider it to be a denial of due process to have the hearing in five days rather than in three days. I think we are dealing with something that is perhaps analogous to our constitutional provision for a speedy trial; [2] and I think in dealing with whether or not the failure to accord a seventy-two hour hearing amounts to a denial of due process, you have to weigh the applicable factors. One of those factors obviously is the length of the delay. You can reduce the inmate's position here to absurdity by holding the hearing one second beyond the seventy-two hour period. Obviously that is so short a period of time that the law would not take cognizance of the two seconds, three seconds and work it up to two days. But in a situation in which the case load is such — and the uncontradicted testimony before the IGC is that because of the present case load in this institution we are unable to reach our cases within seventy-two hours but we are reaching them within five days — I find no denial of due process."

2. Perhaps a better analogy would be the Intrastate Detainers Act, Article 27, Section 616S (e) which mandates dismissal of charges if inmate is not tried within 120 days.

Hopkins' application for leave to appeal to this court was granted and the case was placed on the regular docket. Hopkins, in essence, argues: (1) That the ordinary backlog of cases does not constitute "exceptional circumstances" within the meaning of the Division of Correction Rule 105-2 (c) (1). (2) That the 72 hour time requirement of the Division of Correction Rule 105-2 (c) (1) is mandatory. (3) That the Division of Correction's failure to comply with its own rule is a violation of the due process clause.

## I.

The only evidence in the record before the Commission for the one day's delay in bringing Hopkins to trial before the Adjustment Team was the testimony of James Carrington, a member of the Adjustment Team. The relevant parts of his testimony are as follows:

> "CARRINGTON: Charles Hopkins was charged on the 8th of September with possession of contraband, destruction of state property and attempted escape, . . . . He received a Notice of Infraction on the 10th, which was a Friday. His hearing was held on the following Wednesday, the 15th, and based on the volume of cases at the Maryland Penitentiary, that was a quick hearing. That was less time for his hearing than some others that I have knowledge of . . . ."

> "JONES: Okay. Now, as to Mr. Hopkins, what exceptional circumstances, if any, were there for delaying his hearing?

> "CARRINGTON: Just the regular volume of cases at this institution.

> "JONES: So there were in effect no exceptional circumstances?

> "CARRINGTON: Yeah, these were exceptional. This was a constant exception. We cannot hear cases within the 72 hour limit.

"JONES: So they're common, they're routinely exceptional circumstances.

"CARRINGTON: They're common. We cannot hear cases normally within the 72 hours, based on the volume of adjustment reports we have .... It is very seldom that we are able to hear an adjustment case at this institution within that 72 hours, based on the volume of the cases.

"JONES: So the only exceptional circumstances you're alleging is the volume of cases?

"CARRINGTON: Right."

A reading of Carrington's testimony clearly shows that the single reason for the one day's delay was the regular volume of cases the institution was required to hear. The word "regular" implies continuity and consistency and excludes the idea of incidental and occasional. Obviously there is nothing uncommon or exceptional about a regular volume of cases. If we were to hold that the institution's normal case loads or backlogs justify violation of the rule, it would seriously undermine the purpose and effectiveness of the rule and thrust the inmates back to the same conditions which existed prior to the adoption of the rule.[3]

## II.

Having determined that there were no exceptional circumstances to toll the 72 hour rule, we must now determine whether the rule is mandatory. The rule declares in unequivocal language that: "[T]he written statement *shall* be served to the inmate not later than forty eight (48) hours after the alleged violation, and the inmate *will* appear before the

---

3. In *Bundy v. Cannon,* 328 F. Supp. 165 (D. Md. 1971), a large number of inmates of the Division of Correction were transferred to the Maryland Penitentiary and placed in segregated confinement. In none of the cases was the inmate given written notice of any charges or allegations, nor informed that a hearing would be held until just before the hearing. In addition, a member of the disciplinary panel was also instrumental in placing the charges. The Court held that the Division of Correction procedures did not meet constitutional standards of due process. New adjustment procedures were agreed to by all of the parties and were adopted and promulgated by the Division of Correction. Included therein was Rule 105-2 (c) (1). These new adjustment procedures were also filed as an exhibit in the case and set out as an appendix to the opinion.

Adjustment Team within seventy two (72) hours of the alleged violation unless prevented by exceptional circumstances." (Emphasis added). The term "will" is "an auxiliary verb commonly having the mandatory sense of 'shall' or 'must'. It is a word of certainty, while the word 'may' is one of speculation and uncertainty." *Black's Law Dictionary,* 1771, (4th rev. ed. 1968).

In *Moss v. Director,* 279 Md. 561, 564-565 (1977), the Court of Appeals stated "it is now a familiar principle of statutory construction in this state that the use of the word 'shall' is presumed mandatory unless its context would indicate otherwise." We find nothing in the context of this rule or the rationale giving rise to its promulgation that suggests it is directory.

Nor do we think the absence of sanctions for failure to comply with the 72 hour limitation makes the rule directory. In *Moss, supra,* the Court, in speaking to this issue, stated: "We also note that although the absence of a penalty provision may be one indication that language is directory, . . . it is not dispositive. We have only recently determined that the ninety-day time period of Article 27, Section 264 (c), Md. Code (1957, 1976 Repl. Vol.) for the filing of forfeiture petitions is mandatory, even though there is no penalty provision contained in that statute." *Id.,* at 566. Furthermore, we do not think the rule requires Hopkins to show that he was prejudiced by the one day's delay or that he was denied due process. Regarding this point the *Moss* Court said:

> "We are, however, unable to agree with the Court of Special Appeals' conclusion that, notwithstanding the Section 8 (a) violation, Moss is entitled to no relief since he could not show any due process deprivation. Given the fact that Section 8 (a) is mandatory and the further fact that its command was not obeyed, we hold that the proceedings by the State to have Moss committed to Patuxent must be dismissed, regardless of whether his due process rights were denied." *Id.,* at 568.

Similarly, in *Johnson v. State,* 282 Md. 314 (1978), the Court

of Appeals held that Maryland District Rule 723 (a), which requires that a defendant shall be taken before a judicial officer without unnecessary delay, is mandatory, and that the defendant did not have to demonstrate that he was unfairly prejudiced by reason of the delay.

Accordingly, we conclude that the rule in question is mandatory and must be complied with unless prevented by exceptional circumstances. If the Division of Correction cannot comply with its own 72 hour rule because of increased case loads it should, consistent with procedural due process requirements, change the rule rather than disregard it.

## III.

It is well established that rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force. 2 Am. Jur. 2d Administrative Law, ¶350; 1 Cooper, State Administrative Law, pp. 266-67 (1965 Edition); K. Davis, Administrative Law of the 70's, Section 5-03-5 (Cum. Supp. 1977). This rule has been recognized in federal and state jurisdictions and has become known as the "Accardi doctrine" since it was announced in *U.S. ex rel Accardi v. Shaughnessy*, 347 U. S. 260 (1954). There the Supreme Court vacated a deportation order of the Board of Immigration of Appeals because the Board and the Attorney general failed to follow their own regulations. This doctrine has been broadly applied. See *Service v. Dulles*, 354 U. S. 363 (1959) and *Vitarelli v. Seaton*, 359 U. S. 535 (1959) where the Court held that the executive department may not discharge an employee in a manner inconsistent with its own regulation. In *United States v. Heffner*, 420 F. 2d 809 (4th Cir., 1970) Internal Revenue Service special agents failed to follow their own procedures regarding the interrogation of taxpayers suspected of criminal tax fraud. That Court enunciated what appears to be the prevailing rule [4] when it held: "An agency of the

---

**4.** *Electronic Components v. NLRB*, 546 F. 2d 1088 (4th Cir. 1976); *Union of Concerned Scientists v. Atomic Energy Comm'n*, 499 F. 2d 1069 (4th Cir.

government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." *Id.,* at 811.

While there is an abundance of authority for the doctrine that an agency cannot violate its own rules and regulations, this doctrine has its exceptions. None, however, is applicable to the instant case. The principal exception is that the doctrine does not apply to an agency's departure from procedural rules adopted for the orderly transaction of agency business. In *American Farm Lines v. Black Ball Freight Service,* 397 U. S. 532, 90 S. Ct. 1288, 25 L.Ed.2d 547 (1970), the Supreme Court, in refusing to set aside an order of the Interstate Commerce Commission for failing to require strict compliance with its own regulations, said:

> "The rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion as in Vitarelli v. Seaton, 359 U. S. 535; nor is this a case in which an agency required by rule to exercise independent discretion has failed to do so. Accardi v. Shaughnessy, 347 U. S. 260; Yellin v. United States, 374 U. S. 109. Thus there is no reason to exempt this case from the general principle that '[i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it . . . .' Unlike some rules, the present ones are mere aids to the exercise of the agency's independent discretion." *NLRB v. Monsanto Chemical Co.,* 205 F. 2d 763, 764 (8th Cir. 1953).

1974); *Mandel v. United States Department of Health, Education and Welfare,* 411 F. Supp. 542 (D. Md. 1976), *modified on appeal,* 562 F. 2d 914 (4th Cir. 1977); *E.E.O.C. v. Western Electric Co.,* 382 F. Supp. 784 (D. Md. 1974); *E.E.O.C. v. Westvaco Corp.,* 372 F. Supp. 985 (D. Md. 1974); *E.E.O.C. v. Firestone Tire and Rubber Co.,* 366 F. Supp. 273 (D. Md. 1973); *Francis v. Davidson,* 340 F. Supp. 351 (D. Md. 1972), *aff'd.* 409 U. S. 904, 94 S. Ct. 223, 34 L.Ed.2d 168 (1972); and *McAbee v. Martinez,* 291 F. Supp. 77 (D. Md. 1968), *aff'd.* 393 U. S. 904, 21 L.Ed.2d 195, 89 S. Ct. 226 (1968).

See also *Matthews v. Walter*, 512 F. 2d 941 (D.C. Cir. 1975); *United States v. Lockyer*, 448 F. 2d 417 (10th Cir. 1971); *United States v. Leahey*, 434 F. 2d 7 (1st Cir. 1970).

It is clear that Division of Correction Rule 105-2 (c) (1), which is couched in unambiguous, mandatory language, was not intended to govern internal agency procedures but was specifically adopted to confer important procedural benefits and safeguards upon inmates, including, among other things, "minimizing the length of the period of restrictive confinement which an inmate may be forced to endure prior to an adjudication of guilt." Milleman, *Prison Disciplinary Hearings and Procedural Due Process — The Requirement of a Full Administrative Hearing*, 31 Md. Law Rev. 27, 57 (1971).

Measured by these standards the action of the Division of Correction in departing from its own rule cannot stand.

Although there is persuasive authority for the rule that an agency's failure to follow its own procedures is a violation of due process, *United States v. Heffner, supra,* at 812, we choose to base our decision in this case on the "judicially-evolved rule of administrative law and not on due process [5] grounds." *Service v. Dulles, supra,* at 372. We do so because we are not convinced that the one day's delay here was a denial of due process. We are fortified in our conclusion by the decision in *Bates v. Sponberg,* 547 F. 2d 325 (6th Cir. 1976) where the Court stated:

> "It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions. We conclude that no constitutional violation was shown.

5. But see *Jackson v. Levine,* Civil: B-76-1014 (D. Md. May 20, 1977), a case involving Division of Correction Rule 105-2 (c)((1) where the court flatly held "the failure of an agency of government to follow its own rules and regulations is a denial of due process. See also *Matthews v. Maryland Inmate Grievance Commission,* Law D 764 (Circuit Court for Anne Arundel County, June 7, 1977).

"While courts have generally invalidated adjudicatory actions by federal agencies which violated their own regulations promulgated to give a party a procedural safeguard, we conclude that the basis for such reversals is not, as Bates asserts, the Due Process Clause, but rather a rule of administrative law. A review of the cases relied upon by the district judge fails to persuade us to the contrary. Agency actions in Yellin v. United States, supra, and Accardi v. Shaughnessy, supra, were reversed for violations of their own regulations, but the court did not rely on the Due Process Clause." *Id.,* at 329-330.

*Order reversed.*
*Costs to be paid by appellee.*