507 A.2d 192

**BOARD OF EDUCATION OF BALTIMORE COUNTY**

v.

**Edith J. BALLARD.**

**No. 943, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 8, 1986.

Malcolm F. Spicer, Jr., Co. Atty. and J. Robert Haines, Asst. Co. Atty. (Douglas T. Sachse, Asst. Co. Atty., on the brief), Towson, for appellant.

James B. Whattam (Walter S. Levin and Weinberg and Green, on the brief), Baltimore, for appellee.

Argued before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Edith Ballard, appellee, a librarian employed since 1956 by the Board of Education of Baltimore County, appellant, was terminated by appellant at the end of the 1983–84 school years for incompetency. On appeal, the State Board of Education confirmed appellant's action and appellee filed a timely appeal to the Circuit Court for Baltimore County. That court reversed the judgment of the State Board. This appeal followed and presents but one question:

Did the Appellant violate a substantial right of the Appellee by failing to strictly adhere to its own written policies and procedures?

Our answer is "yes"; therefore, we will affirm the judgment of the circuit court.

Appellee's termination was the culminating event in a series that began in the 1981–82 school year. In that year, she received an unsatisfactory rating. In the subsequent school year, 1982–83, she received two more unsatisfactory ratings and, as a result, was placed on a second-class teaching certificate for the next school year.

Between November and February of the 1983–84 school year, appellee received four formal evaluations, the last on February 3, 1984, one of which was less than satisfactory. Consequently, appellee was informed on February 9, 1984, by letter, that "unless your work becomes fully satisfactory, it will be necessary to recommend to the Board of Education that your contract be terminated."

The written policies and procedures, contained in Article 4 A of appellant's *Personnel Manual,* specifically, Rule 4118.1, *Procedure for Penalizing or Terminating Teachers on Tenure Whose Work is not Satisfactory* provide, in pertinent part:

7. During the year in which the teacher's certificate is rated second-class, a number of visitations and conferences will be made by the principal and supervisor, and if the teacher's work is not fully satisfactory, he/she will receive a letter, during the month of February, from the assistant superintendent advising him/her that unless his/her work materially improves, a recommendation to terminate his/her services at the end of the school year will be made to the Superintendent of Schools.

NOTE: If a teacher has had his/her certificate rated second-class within the past few years, improved sufficiently to be restored to first-class, and then again is doing unsatisfacory work, steps 3, 4, 5, and 6 may be eliminated for such a person, and step 7 applied immediately.

8. Further visitations, conferences and reports will be made by the principal and supervisor; and the appropriate assistant superintendent or the Deputy Superintendent, Division of Administration, should visit the teacher's class if possible.

9. If the teacher's work continues to be unsatisfactory, the assistant superintendent will confer with the teacher. At this point, depending upon the individual circumstances, the possibilities of retirement or resignation will be considered with the teacher, and if neither of these is selected voluntarily by the teacher, he/she will be advised that a recommendation to terminate his/her employment will be made to the Superintendent of Schools.

No formal visits or evaluations were conducted after February 3, and, although appellee was informally observed by her supervisor in late March or early April, there were no

conferences with or reports to appellee in order to guide and assist her attempts to improve her performance. The mid-year evaluation, due to have been conducted in February, having been postponed to April, the only formal contact appellee had with her principal was in April, at the conference to discuss the mid-year evaluation. That evaluation, a copy of which was received on April 17, 1984, was based on the four prior evaluations and listed 19 items as main areas of concern, as to which she had not previously been advised. The assistant superintendent did not confer with appellee concerning alternatives to termination prior to notice of termination. Appellee was advised by letter dated April 25, 1984 from the Superintendent that her termination, effective June 30, 1984, was being recommended to appellant. Following a hearing held at appellee's request, see Md.Ed. Code Ann., § 6–202,[1] appellant by "unanimous decision",

---

1. § 6–202. Suspension or dismissal of teachers, principals, and other professional personnel.

(a) *Grounds and procedure for suspension or dismissal.*—(1) On the recommendation of the county superintendent, a county board may suspend or dismiss a teacher, principal, supervisor, assistant superintendent, or other professional assistant for:

(i) Immorality;

(ii) Misconduct in office;

(iii) Insubordination;

(iv) Incompetency; or

(v) Willful neglect of duty.

(2) Before removing an individual, the county board shall send the individual a copy of the charges against him and give him an opportunity within 10 days to request a hearing.

(3) If the individual requests a hearing within the 10 day period:

(i) The county board promptly shall hold a hearing, but a hearing may not be set within 10 days after the county board sends the individual a notice of the hearing; and

(ii) The individual shall have an opportunity to be heard before the county board, in person or by counsel, and to bring witnesses to the hearing.

(4) The individual may appeal from the decision of the county board to the State Board. In Baltimore City, this paragraph does not apply to the suspension and removal of assistant superintendents and higher levels.

(5) In Baltimore City the suspension and removal of assistant superintendents and higher levels shall be as provided by the city charter.

accepted the Superintendent's recommendation and advised appellee that she was terminated on the grounds of incompetency. Appellee appealed to the State Board, which, adopting the hearing examiner's Findings of Fact, Conclusions of Law and Recommendations to the State Board, affirmed appellant's decision. Although the State Board recognized and found, agreeing with appellee, "that Baltimore County's termination procedure was defective", it also found that appellee "was not prejudiced or unfairly penalized by the defects."[2]

Upon appellee's appeal of the judgment of the State Board, *see*, Md.State Govt.Code Ann., § 10–215(g) the trial court observed that appellant's personnel policy and procedures "accord the teacher the right to certain procedures which provide notice to the individual that her/his performance is below standard and to impress upon such person the seriousness of the situation", and relying on *U.S. ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) and *Hopkins v. Maryland Inmate Grievance Commission*, 40 Md.App. 329, 391 A.2d 1213 (1978), held:

The question is not whether Miss Ballard could have raised her performance to a consistently satisfactory level; nor are the efforts [made prior to February, 1984] to assist her, in question. The regulations of the Superintendent of Schools gave Mrs. Ballard the right to expect certain procedures. By omitting the visits, conferences and reports required by Rules 4118.1, paragraphs 8 and 9,

---

(b) *Probationary period.*—Except for personnel of the Baltimore City public schools at the level of assistant superintendent or above, this section does not prohibit the State Board from adopting bylaws to provide for a probationary period of employment of 2 years or less.

**2.** If appellee was required strictly to follow its rules, whether or not appellee was prejudiced by the defect is not an issue. *U.S. ex rel Accardi v. Shaughnessy; Hopkins v. Md. Inmate Grievance Commission; Md.-Nat'l Cap. P. & P. Friendship Hts,* all *infra.*

[the County Board] did not follow their own regulations. Therefore, Mrs. Ballard was deprived of a substantial right.

The *Accardi* doctrine teaches: "rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force". *Hopkins v. Maryland Inmate Grievance Commission, supra,* 40 Md. App. at 335, 391 A.2d 1213. *See Accardi, supra,* 347 U.S. at 266–68, 74 S.Ct. at 502–04; *United States v. Heffner,* 420 F.2d 809, 811 (4th Cir.1970) ("An Agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."); *Md. Nat'l Cap. P. & P. v. Friendship Hts,* 57 Md.App. 69, 80–81, 468 A.2d 1353 (1984). Appellant acknowledges that the doctrine is alive and well in Maryland and that it applies to appellant's actions. Appellant asserts, however, that it applies only when the regulations "are intended primarily to confer important procedural benefits upon individuals", *Board of Education of Anne Arundel County v. Barbano,* 45 Md. App. 27, 41, 411 A.2d 124 (1980), not when they are primarily designed to facilitate "the orderly transaction of business before [the agency and] when in a given case the ends of justice require it." *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970), quoting *NLRB v. Monsanto Chemical Co.,* 205 F.2d 763, 764 (8th Cir.1953). Thus, it says, "[T]he overall purpose of the relevant provisions of Rule 4118.1 ... is to insure that the highest quality of education possible is provided to Baltimore County students by assisting teachers in improving the quality of their performances and by developing sufficient information on which to terminate the contracts of those teachers who do not meet these

standards"; therefore the trial court erred in applying the *Accardi* doctrine to the facts *sub judice.*[3]

County Board Policy 4100 provides, in pertinent part: Through its personnel policies, the Board of Education wishes to establish conditions that will attract and hold for all positions the highest qualified personnel who will devote themselves to the education and welfare of students.

Although accepting appellee's argument that the termination procedure was defective, neither the hearing examiner, nor the State Board explicitly considered what the primary purpose of Rule 4118.1 is. The trial court, on the other hand, did, finding that

"[t]he County Board directive in establishing personnel policy and procedure states that the purpose of these regulations is to:

[E]stablish conditions that will attract and hold for all positions the highest qualified personnel ....

In *Barbano,* the trial judge found that "Guidelines for the Evaluation of Probationary Teachers" resolved (as opposed to adopted) by the State Board, *see* Md.Educ.Code Ann. § 2–205, "were meant to function in part as aids to assist probationary teachers in becoming competent [and] [a]s such ... were meant to confer an important procedural benefit upon probationary teachers, a benefit which must be protected by requiring strict adherence to the provisions of the guidelines", *Id.* 45 Md.App. at 38–39, 411 A.2d 124. This Court reversed. Regarding the purpose of the "Guidelines", we first observed:

It is apparent ... that while the State Board recognized that among the many benefits to be derived from these guidelines was "the procedural benefit [conferred] upon probationary teachers" ..., it also recognized that the primary concern was the obtention of good teachers and

---

**3.** Appellant does not contend that the trial judge applied an incorrect standard of review. As to that, however, *see* Md.State Gov't.Code Ann. § 10–215(g); *Zeitschel v. Bd. of Educ.,* 274 Md. 69, 332 A.2d 906 (1975).

the prevention of bad ones which is in accord with the underlying concept of the whole scheme of education. The primary purpose of the State Board of Education is not to bestow procedural benefits upon teachers of questionable competency, but to bestow upon students education by teachers of unquestionable competency.

*Id.* 45 Md.App. at 40, 411 A.2d 124. We then concluded that the purpose of the "Guidelines" was to provide a "system". *Id.* 45 Md.App. at 41, 411 A.2d 124. We arrived at our conclusions from a review of the history of the "Guidelines" as gleaned from prior pronouncements of the State Board. *See Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 63–4, 453 A.2d 1185 (1982); *John McShain, Inc., v. Comptroller,* 202 Md. 68, 73, 95 A.2d 473 (1953). Thus, unlike the situation here, aside from the obvious distinction between tenured teachers and probationary teachers, a distinction recognized in *Barbano,* 45 Md.App. at 29, 411 A.2d 124, the history of "Guidelines" clearly demonstrated that, rather than providing probationary teachers with substantial procedural safeguards, their primary focus was to avoid an elaborate appeals procedure.

More to the point is *Hopkins, supra.* At issue there was the applicability of the *Accardi* doctrine to Division of Correction Rule 105–2(c)(1), which provided:

The inmate shall be furnished a written statement of the major infraction with which he is charged. The written statement shall be served to the inmate not later than forty-eight (48) hours after the alleged violation, and the inmate will appear·before the Adjustment Team within *seventy-two* (72) *hours* of the alleged violation unless prevented by exceptional circumstances. The stipulated time excludes Saturdays, Sunday, and holidays. (Emphasis in original)

We held, reversing the decision of the lower court:

It is clear that Division of Correction Rule 105–2(c)(1), which is couched in unambiguous, mandatory language, was not intended to govern internal agency procedures but was specifically adopted to confer important proce-

dural benefits and safeguards upon inmates, including, among other things, "minimizing the length of the period of restrictive confinement which an inmate may be forced to endure prior to an adjudication of guilt." Milliman, *Prison Disciplinary Hearings and Procedural Due Process—The Requirement of a Full Administrative Hearings*, 31 Md.Law Rev. 27, 57 (1971).

*Id.* 40 Md.App. at 339, 391 A.2d 1213. *See also Md. Nat'l Cap. P. & P. Friendship Hts, supra.*

Board Policy 4100 speaks in "unambiguous, mandatory language" which makes clear that its purpose is to confer "important procedural benefits and safeguards" upon tenured teachers. Moreover, the policy and procedures relating to tenured teachers must be read in light of, and pursuant to Md.Educ.Code Ann. § 4–107(4), consistently with, Md.Educ.Code Ann. § 6–202, which provides deterrents to dismissal, thus lending support to appellee's contention that the policy and procedures confer important procedural rights on the individual.

In the case *sub judice,* as the trial court found, and the State Board conceded, appellant did not strictly comply with its own regulation: following the February 9th letter, the principal and the supervisor did not make "[f]urther visitations, conferences and reports"; the assistant superintendent did not "confer with [appellee]" concerning the quality of appellee's work; and the assistant superintendent did not discuss with appellee alternatives to termination. We hold that appellant's failure to strictly comply with the pertinent provisions of Rule 4118.1 violated a substantial right of appellee and its action, taken as a result thereof, cannot stand. *Hopkins, supra. See also Wren v. McDowell County Board of Education,* 327 S.E.2d 464, 465–66 (W.Va.1985) (Failure to follow evaluation procedure prohibits discharge, demotion, or transfer for reasons having to do with prior misconduct or incompetency not called to employee's attention and which is correctable.); *Holland v. Board of Education of Raleigh County,* 327 S.E.2d 155, 156–57 (W.Va.1985) (same); *Neal v. Board of Education, Sch.*

*Dist. No. 189,* 56 Ill.App.3d. 10, 13 Ill.Dec. 777, 371 N.E.2d 869, 872 (1977) (Construing The Teacher Tenure Act, dismissal for cause may only be accomplished validly by adherence to the statute.); *Swartley v. Norristown Area School Dist.,* 51 Pa.Cmwlth. 121, 414 A.2d 153, 155 (1980) (Failure to comply with appropriate section of the school law nullifies dismissal.)

We are aware of the unique status of the State Board and that it has the "peculiarly autonomous power", *Barbano, supra* 45 Md.App. at 42, 411 A.2d 124, to "explain the true intent and meaning of ... [its] by-laws, rules and regulations", Md.Educ.Code Ann., § 2–205(e). We are also aware that the construction given a statute by administrative officials soon after its enactment is persuasive in determining the judicial construction. *Board of Educ., Garrett Co. v. Lendo, supra,* 295 Md. at 63, 453 A.2d 1185. The rule at issue here was neither adopted, nor construed by the State Board. In any event, "where language is plain and unambiguous the judicial construction cannot be controlled by extraneous considerations". *Id.*

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.