540 A.2d 1194

**Helen GEE**

v.

**MASS TRANSIT ADMINISTRATION.**

No. 175, Sept. Term, 1987.

Court of Special Appeals of Maryland.

May 12, 1988.

Certiorari Denied June 16, 1988.

William H. Zinman, Baltimore, for appellant.

Joseph S. Kaufman (Jack L.B. Gohn, on the brief), Baltimore, for appellee.

Argued Before MOYLAN, BISHOP and GARRITY, JJ.

GARRITY, Judge.

The appellant, Helen Gee, an individual who had filed a complaint of handicap discrimination, asks us to review the actions of the lower court and the Appeal Board of the Maryland Commission on Human Relations to determine whether the decision to grant the Motion to Dismiss of the appellee, Mass Transit Administration, was proper. We shall reverse the judgment of the Circuit Court for Baltimore City.

## *Facts*

On January 30, 1977, the appellant filed an application with the Mass Transit Administration (MTA) to become a bus driver. She was given a vision test which revealed that without glasses the acuity of her right eye was below the effective vision standards required for that of a bus operator. As a result, on July 11, 1977, the appellant was informed that her application would be rejected.

On July 18, 1977, the appellant filed a complaint with the Maryland Commission on Human Relations (Commission) in which she alleged that the MTA had discriminated against her by refusing to hire her due to a physical handicap. The complaint was authorized for investigation by the Executive Director of the Commission on April 4, 1979. A copy of the complaint was served on the MTA on April 11, 1979, one year and nine months after the complaint was filed with the Commission. The Commission investigated the complaint, and on March 10, 1981, issued written findings that, *inter alia,* probable cause existed to believe that the MTA had

discriminated against the appellant by refusing to hire her due to her physical handicap.

The Statement of Charges was filed on June 15, 1981. The MTA filed a Motion to Dismiss on July 31, 1981, alleging that the Commission prejudicially delayed the proceedings. The Hearing Examiner issued an Opinion and Order on November 2, 1981, denying the MTA's motion. A hearing on the merits was conducted on March 29, 1982, culminating in an Opinion and Provisional Order which denied the MTA's motion and found that the MTA had discriminated against the appellant due to a physical handicap. The MTA noted timely appeals to the Appeal Board of the Maryland Commission on Human Relations (Board) from the Hearing Examiner's decision on the merits and the denial of its Motion to Dismiss.

On August 8, 1985, the Board reversed the decision of the Hearing Examiner and dismissed the case solely on the basis of the timeliness issue. The Commission moved for reconsideration and by Order dated September 10, 1985, that motion was denied.

The appellant appealed to the Circuit Court for Baltimore City which, after a hearing, issued an Order affirming the Board's decision.

From the circuit court's Order the appellant filed this appeal.

The appellant claims that her case was improperly dismissed by the Board. She argues that: the dismissal denied her due process; the Board misinterpreted the applicable statute and regulations; and that dismissal, in any event, was not an appropriate sanction for the Commission's failure to follow its designated procedures.

I.

At the time the appellant filed her complaint on July 18, 1977, the Commission was governed by statute, Md.Code Ann. Art. 49B, and by the Rules of Procedure Before the Maryland Commission on Human Relations (Rules of Proce-

dure). Within five months, on December 6, 1977 regulations were issued which promulgated the Commission's procedural rules and public hearing process in the Code of Maryland Regulations (COMAR).

The MTA's Motion to Dismiss was filed July 31, 1981, after the Commission issued its written findings that probable cause existed to believe that the MTA had discriminated against the appellant and after a Statement of Charges had been filed against the MTA. The motion was to dismiss the Statement of Charges. The reason stated, however, related solely to the late service of the complaint, which the MTA had received 26 months before the Statement of Charges had been filed.

The MTA argued in the motion that at the time of the filing of the complaint the Commission's regulations had not been promulgated, and that, consequently, the Commission was regulated by Article 49B. The motion stated that the Commission had violated the statute to such an extent that the inordinate delay resulted in the MTA being substantially prejudiced. The MTA further argued that "the General Assembly mandated that promptness was one of the most important aspects of the Complaint—Investigation—Public Hearing process. Failure to address complaints and the issues raised therein with dispatch can only lead to chaos." It is evident that the theory of the motion was to dismiss the complaint for lack of timely service.

The Hearing Examiner dismissed the motion and in his November 2, 1981, Opinion and Order found that the "prompt" language of the statute was clarified and interpreted by the regulations effective December 6, 1977, which required that an investigation be concluded by written findings within two years from the date of the receipt of the complaint by the respondent. The written findings had been issued within the two-year period. The Hearing Examiner further found that the Commission's failure to serve the complaint on the MTA for one year and nine months did not violate the statute and require dismissal because Art.

49B, § 10(a)[1], required prompt investigation after referral to staff, not prompt referral to staff for investigation. He also found that the MTA failed to file its Motion to Dismiss timely as required by the regulations and he rejected the MTA's argument of prejudicial delay.

The Examiner issued his Opinion and Provisional Order on August 6, 1982, and on September 2, 1982, the MTA noted an appeal to the Board.

The MTA argued that the Commission had exceeded its jurisdiction and authority by seeking to impose its own standards on the MTA; that the Commission failed to follow its own statutory mandate and regulations in processing the complaint and filing the Statement of Charges in a timely manner; that the Commission failed to prove that Ms. Gee had a "physical handicap" within the meaning of Art. 49B, § 15(g); that the Opinion and Provisional Order was arbitrary and capricious; that back pay was improperly awarded; and, that the Hearing Examiner erroneously refused to adopt the Respondent's Proposed Findings of Fact and Conclusions of Law.

On August 8, 1985, the Board issued its Opinion which reversed the decision of the Hearing Examiner solely on the grounds that the Commission failed to comply with its rules and regulations with regard to timely notice to MTA. The Board stated:

We believe the language of Article 49B, § 10(a) and COMAR 14.03.01.02 F.(1) to be unambiguous, mandatory language which was not intended merely to govern internal agency procedures but was specifically adopted to confer important procedural benefits and safeguards upon respondent parties to the commission's proceedings. *Hopkins v. Md. Inmate Griev. Comm'n*, 40 Md.App. 329, 337 [391 A.2d 1213] (1978). We disagree with the commission that the provisions cited above are merely of a "housekeeping" nature.

---

1. Formerly Art. 49B, § 13(a).

The Board went on to note that the regulations provide a penalty for failure to adhere to the time requirements and the use of the word "shall" in the regulations should be considered as mandatory and must be complied with since there is no indication that the notice requirement is merely directory.

The Board further noted that:

It is well established that rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force ... and that an agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down.

*Hopkins v. Maryland Inmate Griev. Comm'n.*, 40 Md.App. 329, 335–36, 391 A.2d 1213 (1978).

 We believe the Board's reversal of the Hearing Examiner's decision was improper. In reviewing the Hearing Examiner's decision the Board improperly applied CO-MAR to justify its reversal.

As noted above, COMAR's effective date was after the complaint had been filed with the Commission. Generally, when a change in the law occurs, it affects all new and pending cases to which it applies unless the statute specifically states otherwise or affects a party's substantive rights. *Janda v. General Motors*, 237 Md. 161, 205 A.2d 228 (1964).

Because of the potential for interference with substantive rights ... and because of the resulting prejudice against retroactive application, the presumed intent is that statutes operate prospectively and are to be construed accordingly. Nevertheless, if the statute contains a clear expression of intent that it operate retrospectively, or the statute affects only procedures or remedies, it will be given retroactive application.

*State Comm'n on Human Relations v. Amecom Division,*
278 Md. 120, 123–24, 360 A.2d 1 (1976) (citations omitted).

When the regulations were issued on December 6, 1977,
the present case was pending before the Commission.
There is no indication that the regulations were intended to
operate retrospectively. Furthermore, any retrospective
application of the regulations would obviously affect the
substantive rights of Ms. Gee.[2] Consequently, based on the
facts and circumstances of this case, we hold that the
regulations are inapplicable.

■ The applicable statute in effect on July 18, 1977 was
Article 49B, and § 13(a)[3] required, in part, that:

> After the filing of any complaint the Executive Director
> shall consider the complaint and shall refer it to the
> Commission's staff for prompt investigation and ascer-
> tainment of the facts.

The language of the statute clearly required "prompt inves-
tigation and ascertainment of facts" *after* the Executive
Director considered and referred it to the Commission's
staff. The statute set forth no time within which the
respondent had to be served with the complaint. In fact,
the statute does not require that the complaint be served
upon the respondent until after the investigation is complet-
ed, there has been a finding of cause to believe discrimina-
tion was committed, and there has been a failure to reach
agreement as to the elimination of the discrimination. In-
deed, the statute is clear in its requirement that the poten-
tial respondent not be subjected to a complaint until a
preliminary investigation has been conducted to insure the

2. The regulations additionally required that service upon the respon-
dent be made "not more than 120 days from the date on which this
complaint was filed." At the time the regulations were issued, how-
ever, Ms. Gee's complaint was already more than 120 days old. As a
result, if we were to hold the regulations applicable, Ms. Gee's com-
plaint could have been dismissed before ever having been reviewed by
the Executive Director.

3. Present Art. 49B, § 10(a).

reliability of the information in the complaint. *Banach v. St. Comm'n on Human Rel.*, 277 Md. 502, 356 A.2d 242 (1976); *Solely v. St. Comm'n on Human Rel.*, 277 Md. 521, 356 A.2d 254 (1976).

The Court of Appeals observed in *Banach* that "it is at the adjudicatory stage of the administrative proceeding that the parties must be accorded such traditional elements of fair play as notice of charges and opportunity to be heard." *Id.* [277 Md.] at 515, 356 A.2d 242. The Court went on to note that:

> [T]he term "hearing" refers to quasi-judicial proceedings where the "traditional safeguards" of fairness must be observed, while the same test need not be met in the "non-judicial" investigative stage. It is only when the conciliation process prescribed by § 13 [§ 10] fails and the hearing stage contemplated by § 14 [§ 11] is invoked that the investigative yields to the adjudicative function.

*Id.*

 The Commission's Rules of Procedure were promulgated pursuant to the Administrative Procedure Act, Art. 41, § 244 *et seq.* (1971) and required the Commission's staff to furnish the respondent with notice of the complaint in a timely fashion.

> Promptly after a complaint is filed the Commission staff shall furnish the respondent with a notice thereof ...

Despite the seemingly mandatory nature of this rule we believe that the Commission's failure to serve promptly the respondent with notice of the complaint did not warrant dismissal.

Using the reasoning enunciated by this court in *Bellamy v. State*, 50 Md.App. 65, 78–79, 435 A.2d 821 (1981), where we held that the late filing of a report by the Department of Mental Hygiene did not warrant a dismissal, we note first that the Rules of Procedure did not provide a sanction for the failure to serve the respondent promptly with notice in accordance with the dictates of the statute. *See Brodak v. Brodak*, 294 Md. 10, 447 A.2d 847 (1982); *Pope v. Secretary of Personnel*, 46 Md.App. 716, 420 A.2d 1017 (1980). Sec-

ond, it is significant that within five months of the filing of the complaint, regulations were issued in COMAR which superseded the Rules of Procedure and provided, as did the statute, that notice of the complaint be served upon the respondent after authorization by the Executive Director.

We, therefore, hold that the Board of Appeals improperly applied the law when it granted MTA's Motion to Dismiss for lack of timely notice.

## II.

The MTA contends that the doctrine of laches applies, in any event, because in addition to the delay being unexcused and unexplained, it was substantially prejudiced in that its Personnel Manager who had formulated the physical standards had died, two administrators had relocated, and there had been changes in the law. As the Hearing Examiner noted, however, none of the changes now complained of took effect until after the MTA had been served with a copy of the complaint.

In its Order of August 8, 1985 the Board agreed with the Hearing Examiner that

[t]he delay by the Commission in providing notice of the complaint to the respondent and then again in completing its investigation prior to issuing findings strikes us as both unreasonable and unexplained.

The Board, however, did not agree with the Hearing Examiner's determination that:

The respondent having had an opportunity to safeguard the evidence necessary to defend in this matter, cannot show such prejudice as to enable the hearing examiner to dismiss this action under the equitable doctrine of laches.

To the contrary, the Board found that:

[T]he hearing examiner erred in his reading of the above cited cases [*EEOC v. Alioto Fish Co.,* 623 F2d 86 (CA 9 1980) and *Occidental Life Insurance Company v. EEOC*] and in holding that there was not sufficient evidence in this record to support a finding of substantial prejudice to the respondent.

. . . .

Analogizing to the rationale adopted by certain federal courts in dealing with inordinate delays in Title VII litigation, we believe that in an appropriate case where the respondent has suffered undue prejudice and the agency's delays are unexcused and unreasonable, the case ought to be dismissed. Since we believe that the present appeal presents such an appropriate case, we shall reverse the ruling of the hearing examiner and dismiss this action with prejudice. COMAR 14.03.01.08F.

(citations omitted).

Generally, when reviewing the actions of an administrative agency we must determine whether a reasoning mind reasonably could have reached the factual conclusions the agency reached, *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 390 A.2d 1119 (1978), and "the legality of the decision." *Board of Education of Montgomery County v. Paynter,* 303 Md. 22, 491 A.2d 1186 (1985). To do so here we must review the two cases which the Board found the Hearing Examiner had erroneously interpreted.

The first case, *Occidental Life Insurance Company v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), involves an employee of Occidental Life Insurance Company (Occidental) who filed a sexual discrimination charge with the Equal Employment Opportunity Commission (EEOC) on March 9, 1971. The charge was served on Occidental and on February 25, 1972 the EEOC served its proposed findings of fact on Occidental. Conciliation discussions began in the summer of 1972. On September 13, 1973, the EEOC determined that conciliation efforts had failed. On February 22, 1974, more than three years after the charge was first made and five months after the breakdown of conciliation efforts, the EEOC brought the action for enforcement in the Federal District Court.

Occidental moved for summary judgment and the court granted the motion on the ground that enforcement action

was required to have been brought within 180 days of the filing of a charge with the EEOC. The court alternatively held that "the action was subject to the most appropriate State limitations statute" which in this case was a one-year limitations provision.

The EEOC appealed and the Court of Appeals for the Ninth Circuit reversed. The Court of Appeals held that federal law does not impose a 180 day limit on the EEOC's authority to sue and that the action was not governed by the statute of limitations. The Supreme Court affirmed The Court of Appeals decision and noted that:

> Unlike the litigant in a private action who may first learn of the cause against him upon service of the complaint, the Title VII defendant is alerted to the possibility of an enforcement suit within ten days after a charge has been filed. This prompt notice serves, as Congress intended, to give him an opportunity to gather and preserve evidence in anticipation of a court action.
>
> . . . .
>
> It is, of course, possible that despite these procedural protections the defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief.

*Id.* at 372–73, 97 S.Ct. at 2457–58.

In referring to *Occidental,* the Hearing Examiner found that:

> [T]he Supreme Court stated that the notice of the filing of the complaint with the EEOC and notice to the respondent, afforded a respondent . . . "an opportunity to gather and preserve evidence in anticipation of a court action. . . ." The Court, therefore, held that when a respondent was promptly put on notice that a charge of discrimination in employment had been served upon him, there

was an obligation on the part of the respondent to insure that all necessary records and other evidence be preserved for the purpose of the trial.

In applying *Occidental* to the case *sub judice*, the Hearing Examiner determined that:

[A]t the time of the notice of the filing of the complaint herein, the respondent, when notified, had in its active employ Mr. Lurz whose untimely death now is the primary source of its contention of prejudice.... The respondent, therefore, had ample opportunity to protect its interest by safeguarding all documents and evidence necessary to defending this complaint, during the lifetime of Mr. Lurz.

While agreeing with the Hearing Examiner's interpretation of Occidental that "defendants who are served with timely notice of charges have an opportunity to gather and preserve evidence in anticipation of court action," the Board noted that:

[T]he decision goes on to state that "It is, of course, possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts." In the present case one year and eleven months passed between the very late notice provided to the MTA and the issuance by the Commission of written findings, leading to certification for public hearing.

First, we note that the passage in *Occidental* to which the Board refers is dicta. Second, we do not believe the Board's interpretation of the passage to be entirely accurate or its application to be correct. The Supreme Court clearly stated that a significant handicap to a defendant might still result from a delay in "filing the action after exhausting its conciliation efforts." *Id.* at 373, 97 S.Ct. at 2458. In the case at bar, less than three months had transpired between conciliation efforts and the filing of the Statement of Charges.

The second case, *Equal Emp. Opportunity Com'n v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir.1980), involved an employment discrimination suit brought by the EEOC against the Alioto Fish Company (Alioto). The U.S. District Court for the Northern District of California granted Alioto's Motion for Summary Judgment on the ground that the action had been barred by laches. The EEOC appealed and the Court of Appeals for the Ninth Circuit held that the District Court's finding, that the EEOC's delay was unreasonable and the action was barred by laches, was not erroneous.

The Court of Appeals noted that:

The dispositive question is whether viewing the facts in the light most favorable to the EEOC, Alioto has been substantially prejudiced by the delay. The following uncontroverted facts support the district court's finding of prejudice:

(1) at least three persons who had authority to hire employees from 1965 until 1976 are deceased;

(2) the EEOC conciliator is also dead;

(3) the night manager at the time Eve Stone applied for a job, who was authorized to hire dining room employees, has retired and is now 74 years old;

(4) only one of sixteen persons employed as food servers in 1971 is still employed at the restaurant;

(5) the EEOC employee who investigated Stone's charge no longer works for the EEOC and was unavailable at the time of the judgment below;

(6) Eve Stone has retained no records pertaining to this action and does not even recall whether or not she applied for employment at Alioto's;

(7) Alioto has not retained job applications and complete employment records dating from before approximately October, 1973.

*Id.* at 88 (footnotes omitted).

In addition to the facts quoted above in support of the Court's finding of prejudice in Alioto, we note that suit was

filed 62 months after the charge was first filed with EEOC and no less than 20 months after conciliation had failed.

The Hearing Examiner, in referring to Alioto, stated that he could not:

[E]quate the prejudice suffered in that case with the prejudice suffered in the instant situation.

The Board, however, found that:

In both cases the agency's delays were unreasonable and unexcused except for vague references to internal agency problems. In both cases the respondent was forced to defend itself at trial years after the individual complaint was filed with the agency. And in both cases the respondent had suffered the loss, through death or retirement of personnel critical to the establishment of its defense on the merits of the case.

In *Alioto*, each factor leading to the finding of prejudice, and ultimately the grant of Alioto's summary judgment motion, specifically resulted from the inordinate delay by the EEOC in filing suit. As previously discussed, in the case *sub judice*, the MTA's Motion to Dismiss was based upon the Commission's delay in serving Ms. Gee's complaint of discrimination. MTA alleged that it had been prejudiced, primarily, due to the untimely death of Mr. Lurz. It must be noted, however, that Mr. Lurz died 17 months after MTA had been served with the complaint. The MTA further contended that it had been prejudiced by the acceptance of out-of-state positions by two former administrators who had, with Mr. Lurz, formulated the visual acuity standards for bus operators. Apparently, MTA believed that the two former administrators would somehow not be available to testify in its behalf.

While we agree with the Board that prejudices were suffered in both *Alioto* and the case at bar, we also agree with the Hearing Examiner that the substantial prejudice realized in *Alioto*, due to the inordinate delay by the EEOC in filing suit, cannot be either fairly or reasonably equated with that which had been experienced by MTA.

## III.

■ The MTA also avers that the appellant failed to pursue her complaint actively and, therefore, she must suffer the consequences of her failure to act. A review of the applicable procedure, however, reveals no requirement to act by the complainant beyond the filing of the complaint within six months of the alleged discriminatory act. It is clear that the appellant completely complied with this requirement.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.