768 A.2d 131

**POLLARD'S TOWING, INC., et al.,**

v.

**BERMAN'S BODY FRAME & MECHANICAL, INC., t/a Berman's Towing.**

**No. 249, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 7, 2001.

278

Michael B. Sauer, Towson, for appellant.

M. Albert Figinski (Saul, Ewing, Weinberg & Green on the brief), Baltimore, for appellee.

Argued before MOYLAN,* DAVIS and RAYMOND G. THIEME (Retired, specially assigned), JJ.

MOYLAN, Judge.

In this appeal, the appellants, Pollard's Towing, Inc.; Bud and Jeff Dansicker, Inc.; Pikesville Auto and Body Repair, Inc.; and Baltimore County Organized Licensed Towers, Inc., challenge a ruling in the Circuit Court for Baltimore County which reversed the Baltimore County Board of Appeals's denial of a towing license to the appellee, Berman's Towing.

---

* Moylan, J., participated in the hearing of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

The appellants present the following issues for our consideration:

1. Did the circuit court err in holding that the Board of Appeals improperly relied on "unpublished" criteria when reversing the decision of the Department of Permits and Development Management to issue the appellee a towing license?

2. Even if the circuit court properly reversed the decision of the Board of Appeals, did the circuit court err in ordering that the appellee's towing license be reinstated instead of remanding the action to the Board of Appeals for further proceedings?

As we reframe the critical issue before us, our focus will be on whether the County Board of Appeals had substantial evidence before it to support its ultimate conclusion that no adequate need had been shown for the towing license in issue. Although the Board's Opinion of December 31, 1998, at times reads like an appellate review of the earlier decision of the Department of Permits and Development Management to issue the license, the bottom line is that on November 5, 1998, the Board conducted an extensive *de novo* hearing "regarding the approval of a towing license permit." As counsel for the appellants framed the issue before the Board:

> As aggrieved parties, *[we] would like to produce evidence and testimony to establish that the need criteria which is* probably the second most important issue in this case, *has not been met, and that on that basis the license should not be issued.*

(Emphasis supplied).

Five witnesses testified before the Board on the subject of need. Eugene Freeman, the Director of the Department, testified as to what the Department had relied upon to issue the license. The net effect of the language in the Board's Opinion criticizing the actions of the Department as "arbitrary" was to establish the complete insubstantiality of any evidence of need:

The basic problem area present in this case is not the reliance of the permits department in granting the license based on need expressed by the Maryland State Police, but that *the "need" requirement has not substantive backup.* Had the Maryland State Police provided information documenting the need, the permits department was free to grant such a regular license with limitations, provided that criteria is known to the public and other towers relative to such specific criteria.

(Emphasis supplied).

The Opinion of the Board then went on to recite the testimony of four other witnesses, each of whom testified that there was no need. Our inquiry will focus on whether the evidence before the Board gave it a substantial basis for concluding that there had not been an adequate showing of a need for the towing license.

### Title 24, Article VI of the Baltimore County Code

Title 24, Article VI of the Baltimore County Code generally explains the rights and sets forth the procedural requirements of businesses engaged in the practice of towing vehicles on Baltimore County roadways. Section 24–226(a) provides:

It shall be unlawful for any person to engage in towing disabled vehicles from the scene of a motor vehicle accident occurring within the county without first having obtained a license from the department of permits and licenses to do so. . . .

The Department of Permits and Development Management ("the Department")[1] is vested with the authority either to approve or to deny applications for such towing licenses.

The Department's determination of whether to approve an application for a towing license is governed by section 24–229 of the County Code, which provides that

---

1. During the course of the events relevant to this appeal, the Department changed its name from the "Department of Licenses and Permits" to the "Department of Permits and Development Management." We shall simply refer to it as "the Department."

*new licensed towers shall be approved* by the Department of Permits and Licenses *based upon the need for additional service.* If the need does not exist, the application will not be approved.

(Emphasis supplied). Once a license is obtained, a towing business is assigned a specific geographical area within the County in which it can operate and it is notified by the police whenever a disabled vehicle needs to be removed from an accident scene.

## The Appellee's First Application for a Towing License

In February of 1994 the appellee, a private towing business located in Baltimore City and operating in the City and surrounding areas, applied for a license to tow disabled vehicles from accident scenes in the southwest portion of Baltimore County. On July 7, 1994, the Department denied the appellee's application.

The appellee appealed the denial of the towing permit to the Baltimore County Board of Appeals ("the Board"). The sole issue before the Board was whether a new towing license should be issued to the appellee based on the need for such services under § 24-229 of the County Code. A hearing was held on the matter, and on December 14, 1995, the Board issued an Opinion in which it affirmed the decision of the Department to deny the appellee's request for a towing license, holding that "there is no demonstrated need for an additional licensed tower in the area." No further action was taken by the appellee.

## The Appellee's Second Application for a Towing License

On November 6, 1997, the appellee again sought a towing license by filing an application with the Department. In preparing its request, the appellee communicated directly with the Maryland State Police to determine whether a need existed for additional towing companies to operate in the Baltimore County area. On May 13, 1997, Lieutenant Commander Michael J. Fisher of the Golden Ring Barrack informed the appellee:

> [T]his letter will serve as an official request for you to become a licensed tow service provider in Baltimore County, Maryland.... *I am requesting that the Baltimore County Department of Licenses and Permits issue you said permit as a need exists for your services by the Maryland State Police,* Golden Ring Barrack.
>
> The Office of the Attorney General has expressed in writing that the State Police need does not supercede the County's requirements to issue the aforementioned permit. This letter should serve as additional documentation for you to present to the Baltimore County Executive Office in your attempt to secure said license.

(Emphasis supplied).

Some time after that letter was received by the appellee, Lieutenant Commander Fisher was replaced at the Golden Ring Barrack by Lieutenant Commander Michael E. Davey. Although initially disagreeing with Fisher's determination that a need existed for additional towing services, Davey ultimately changed his position and notified the appellee by a letter dated October 29, 1997, that a need, indeed, existed for his towing services. The letter was identical to the one sent to the appellee by Lieutenant Commander Fisher on May 13, 1997, with the sole exception of the signature of the commanding officer.

On October 29, 1997, the appellee faxed a copy of Lieutenant Commander Davey's letter to Arnold Jablon, the Director of the Department, along with a request to "please call me and let me know what I need to do next." On November 3, 1997, the appellee received the following letter from Eugene Freeman, Chief of the Permits and Licenses Division of the Department:

> The purpose of this letter is to inform you that Baltimore County will issue you a towing license. The license will be issued based upon a written expression of need by the Maryland State Police in a later dated October 29, 1997, from Lieutenant Michael E. Davey. The State Police request for your services within Baltimore County is deemed

sufficient justification to satisfy the "need" criteria established by ... Section 24–229 of the Baltimore County Code. However, please be advised that this license is being issued only to enable you to receive calls from the Maryland State Police relative to the Interstate.

\* \* \*

To initiate the issuance process, complete the enclosed towing license application and return it with the appropriate fee.

In accordance with that letter, the appellee submitted his application for a towing license along with the required fee.

In the meantime, the Baltimore County Police Department Towing Unit had conducted its own investigation into whether there was a "need" for the appellee to be a licensed tow operator. The involvement of the County Police Department was appropriate because of the ongoing coordination between the County and State Police with respect to how the two departments were to handle enforcement of the laws on interstate highways in Baltimore County. Before a towing license may be issued, the County Police must conduct an inspection to determine whether there is an adequate "storage location" and adequate "towing vehicles."

In a Memo to the Department dated February 12, 1998, the County Police Department set forth eight criteria which it used to determine whether a "need" for the appellees services existed. Those criteria were:

1. The geographical location of the tower with respect to heavily traveled roadways;

2. The number of accidents with disabled vehicles on these heavily traveled roadways in the applicant's area;

3. The proximity of other licensed towers, both in terms of miles and minutes between the applicant's location and the licensed towers' locations that are currently servicing the area;

4. A history of the previous year; late response times, no response times, number of trucks and complaints of the current licensed towers;

5. The growth potential for the particular geographical area in which the applicant is located;

6. The average daily traffic count for the heavily traveled roadways in the applicant's area;

7. Whether or not the application is for a location where a tow license had previously existed; and

8. The quality of the operation of the applicant, including the number of trucks, the number of years experience in towing, and whether or not the tower is in a position to furnish specialized services.

The County Police Department in its Memo discussed in detail each of those eight factors, but it made no formal recommendation as to whether, in its opinion, a towing license should be issued to the appellee. On March 4, 1998, the Department approved the appellee's application, and it issued the appellee a towing license for State Police towing only.

On April 1, 1998, the appellants, all of which operated towing businesses in the geographical area for which the appellee had been approved to operate his towing business for the State Police, appealed the Department's decision to issue the appellee a permit. On November 5, 1998, a hearing was held before the Board of Appeals. On December 31, 1998, a fifteen-page Opinion was issued by the Board in which it explained:

The issue involved concerns the issuance of a towing permit to the Applicant, which the Appellants contend is in violation of statute since the Applicant did not satisfy the "need" requirement of the law; and, in the alleged "illegal" issuance, the Appellants have been "aggrieved."

* * *

The Board, in its assessment of this case, clearly believes the permit department acted in an arbitrary manner in

permitting the Maryland State Police to finally determine if a "need" existed. This functions as a delegation of authority and confers upon a State agency an improper responsibility because the agency expresses a "need" without any statistical data, background or substantive basis for ascertaining such "need." Such actions do substantial injustice to other towers who are required to justify such licenses in compliance with the previously required eight criteria; and creates doubt and suspicion as to other separate and distinct factors that may have been present in such consideration. . . .

At the conclusion of the Opinion, the Board then

**ORDERED** that the decision of the Department of Permits & Licenses granting the Applicant's (Berman's Towing) request for a towing license be and the same is hereby **REVERSED;** and it is further

**ORDERED** that the Applicant's (Berman's Towing) request for a towing license be and is hereby **DENIED.**

The appellee thereafter sought judicial review of the Board's decision in the Circuit Court for Baltimore County. Although the case was originally scheduled for a hearing, the parties later agreed to submit the case to the court without a hearing based on substantive memoranda filed by each party. On March 1, 2000, the circuit court issued the following Memorandum Opinion:

On judicial review this Court has reviewed the memoranda, exhibits and testimony and finds that the Department of Permits and Development Management properly issued a permit to the Petitioner to conduct the towing operations pursuant to the request of the Maryland State Police, and that *the decision of the County Board of Appeals of Baltimore County reversing the decision of the Department of Permits and Development Management and revoking the permit to the Petitioner was based on unpublished criteria.*

This Court finds that the County Board of Appeals relied upon matters and cases previously brought before it, and

considered these matters to be the equivalent of published criteria on which it could rely in arriving at its decision....

ORDERED, that the Order of December 31, 1998, of the County Board of Appeals is hereby reversed, and *this matter is remanded to the County Board of Appeals to reinstate the Petitioner's license* as established and granted by the Department of Permits and Development Management to tow disabled vehicles "for the State Police only."

(Emphasis supplied). From that decision the appellants appealed.

### Standard of Review

 When asked to consider the validity of the ruling of an administrative agency,

> a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency, but it must not itself substitute its judgment for that of the agency.

*Baltimore Lutheran High School v. Employment Security Admin.*, 302 Md. 649, 662, 490 A.2d 701 (1985). We are bound by the agency's findings of fact and may not substitute our judgment for that of the agency unless no "reasoning mind reasonably could have reach the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512, 390 A.2d 1119 (1978). We further view the agency's decision in the light most favorable to the agency, "since the decisions of administrative agencies are *prima facie* correct, and carry with them the presumption of validity." *Id.* at 513, 390 A.2d 1119.

In *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372 (1969), the Court of Appeals further elaborated on the deference given to the decision of an administrative agency:

> We have made it quite clear that *if the issue before the administrative body is "fairly debatable," that is, that its determination involved testimony from which a reasonable man could come to different conclusions, the courts will not*

*substitute their judgment for that of the administrative body* [.]

This rule will be adhered to even if we were of the opinion that the administrative body came to a conclusion we probably would not have reached on the evidence.

(Internal citations omitted; emphasis supplied).

## Discussion

At the outset, let it be clear whose decision is being reviewed and by whom. The review on the ultimate merits is now being conducted by this Court. We are not reviewing the procedural correctness of the earlier review by the circuit court. We are undertaking our own *de novo* review of the decision of the administrative agency. As Judge Motz explained in *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994):

Moreover, it is well recognized in Maryland that, *when reviewing administrative decisions, the role of an appellate court is precisely the same as that of the circuit court. See e.g., Baltimore Lutheran High Sch. Ass'n, Inc. v. Employment Security Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985) ("a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test"). For those reasons, rather than remanding to the circuit court for it to determine, under the correct legal standards, whether the SOPD's decision is based on substantial evidence, we shall address the question.

(Emphasis supplied). See also *Stover v. Prince George's County,* 132 Md.App. 373, 380–81, 752 A.2d 686 (2000). The decision of the circuit court, therefore, is before us only in a *pro forma* capacity, as the necessary procedural conduit by which the decision of the administrative agency gets to us for our review.

At the other end of the reviewing microscope, it is clear that the decision we are reviewing is not the November 3, 1997, decision of the Chief of the Permits and Licenses Division of the Department nor the March 4, 1998, decision of the Depart-

ment. It is exclusively the December 31, 1998, decision of the Board. We are not reviewing the procedural propriety of how the Board handled an earlier determination further down the administrative chain. We are reviewing only its *de novo* decision on the ultimate merits of whether the towing license in issue should have been granted. Sect. 603 of the Baltimore County Charter provides:

All hearings held by the board shall be held *de novo*.

*Boehm v. Anne Arundel County,* 54 Md.App. 497, 511, 459 A.2d 590 (1983), elaborated on a *de novo* hearing:

A trial or hearing '*de novo*' means trying the matter anew as if it had not been heard before and as if no decision had been previously rendered.

\* \* \*

As such, unless otherwise limited by statute or court rule, a *de novo* hearing is an entirely new hearing at which time all aspects of the case should be heard anew as if no decision had bene previously rendered.

In *Lohrmann v. Arundel Corp.,* 65 Md.App. 309, 319, 500 A.2d 344 (1985), we further observed:

In effect, then, in this case the Board was exercising what amount to original jurisdiction. It was as though the zoning officer had made no decision.

See also *Hill v. Baltimore County,* 86 Md.App. 642, 587 A.2d 1155 (1991) (the "*de novo* hearing is for all intents and purposes the first hearing of the case.").

As we, therefore, undertake our review of the decision of the Board, our focus is on whether there was substantial evidence to support the Board's ultimate decision, not on whether the Board correctly reversed the earlier decision of the Department. In an analogous case where an administrative agency reversed an earlier decision by an Administrative Law Judge, the opinion of this Court in *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 301–02, 641 A.2d 899 (1994), was very clear:

When reviewing an agency's decision overruling an ALJ's recommendation, *the question is not "whether the agency erred" in overruling the ALJ but whether there is substantial evidence for the agency's decision.* ... It is the agency's responsibility to make the final decision; in doing so, it certainly may "substitute" its judgment for that of the ALJ. Moreover, the agency's substituted judgment must be affirmed by a court—*if* it is based on substantial evidence.... [I]f there is "evidence to support each of two conflicting views," *e.g.,* the ALJ's *and* the agency's, the finding of the agency "must be allowed to stand despite the fact that [a court] might have reached the opposite conclusion on [its] own."

To summarize, *when an administrative agency overrules the recommendation of an ALJ, a reviewing court's task is to determine if the agency's final order is based on substantial evidence in the record.*

(Citations omitted; emphasis supplied).

With respect to the substantial evidence test, *Stover v. Prince George's County,* 132 Md.App. 373, 381, 752 A.2d 686 (2000), explained:

[T]o the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the "substantial evidence test." The reviewing court's task is to determine "whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions." The court cannot substitute its judgment for that of the agency, but instead must exercise a "restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions."

(Citations omitted).

In this case, all that was required was that the Board be **not persuaded** that there was a need for additional towing services. To the extent its finding was weightier than that, the incremental weight was surplusage. Far less is required to support a merely negative instance of non-persuasion than is

required to support an affirmative instance of actually being persuaded of something. In *Starke v. Starke,* 134 Md.App. 663, 761 A.2d 355 (2000), we discussed that distinction between persuasion and non-persuasion:

> *[I]t is far easier to sustain as not clearly erroneous the decisional phenomenon of not being persuaded than it is to sustain the very different decisional phenomenon of being persuaded.* Actually, to be persuaded of something requires a requisite degree of certainty on the part of the fact finder (the use of a particular burden of persuasion) based on legally adequate evidentiary support (the satisfaction of a particular burden of production by the proponent). There are within reasonable frequency reversible errors in those regards. *Mere non-persuasions, on the other hand, requires nothing but a state of honest doubt. It is virtually, albeit perhaps not totally, impossible to find reversible error in that regard.*

(Emphasis supplied).

In this case, the Board was not simply **UNPERSUADED OF A NEED** (a mere state of honest doubt is all that is required for non-persuasion). It was affirmatively **PERSUADED OF NO NEED** (more than it was required to find). There was, moreover, much evidentiary support for the Board's findings in that regard.

■ At the November 5, 1998, hearing before the Board, there was significant testimony regarding the eight factors used by the County Police in addressing the "need" criteria of County Code § 24–229. Eugene Freeman, Chief of the Permits and Licenses division of the Department, testified regarding the Memo prepared by the County Police with regard to the appellee's application for a towing license:

> Well, basically, what this report states—*the police department normally covers eight general areas addressing the need criteria,* as they call it.

> And if I may refer to some notes I made, those eight points are, number one, the Police Department normally

comments on the geographical area, geographical location of the tower with respect to heavily traveled roadways.

The second point they normally cover is the number of accidents with disabled vehicles on heavily traveled roadways in the applicant's area.

Another point is the proximity of other licensed towers servicing the area adjacent to the applicant's location. They provide previous years' performance data from currently licensed towers in that geographical area.

There are comments regarding growth potential. They provide average daily traffic counts for heavily traveled roadways in the applicant's area.

There are comments as to whether or not the application is for a location where a towing license had previously existed.

And, finally, there are comments regarding the applicant's quality of operation, including the number of trucks, years of experience and capability to perform special licensed services.

*These are the eight points generally covered in the police report regarding all applicants for a tow license.*

(Emphasis supplied).

Mr. Freeman also confirmed that, at the time the appellee applied for its first towing license in early 1994, those eight criteria were used:

The original application that was denied was for a regular Baltimore County towing license to satisfy the requirements of the Baltimore County Police to tow vehicles from accident scenes within Baltimore County.

*At that time, we used* the data provided in the Baltimore County Police report, *the eight criteria that I mentioned earlier, addressing need.*

(Emphasis supplied).

Officer Frederick Daneker was assigned to the Traffic Management Unit of the Baltimore County Police Depart-

ment. At the hearing he testified as to the use of the eight criteria when determining need for additional towing services:

Q: Do you have a procedure that you follow after you receive the application [for a towing license]?

A: I log it in a book I keep track of as they come in. From there, I set forth the criteria that ha[ve] been set prior to my being there, step by step.

Q: I believe there's been testimony that there are eight particular criteria?

A: That is correct.

Q: *Those eight criteria have been in existence for quite some time?*

A: *As I understand it, yes sir.*

Q: Dating back to as early as the seventies?

A: I don't know exactly how far back, but I know at least five years.

\* \* \*

Q: Based upon your being a member of the towing unit in Baltimore County, and you're testifying that there are eight criteria that apply, do you know how long th[ose] eight criteria ha[ve] been in existence? . . .

A: *My eleven years on the department, . . .* since that time, six months for training, eleven years *the criteria ha[ve] been applied.*

(Emphasis supplied).

The testimony before the Board clearly established that the eight criteria had been consistently used for several years when determining whether, under County Code § 24–229, a need existed for towing services. Those criteria, although not formally published in any County manual or regulation, are common sense and logical factors to be considered when attempting to reach a conclusion as to whether a need for towing services exists.

In addition to Officer Daneker, three other witnesses—licensed towers in the affected area of the County—also testified as to the absence of any need for additional towers.

The Board of Appeals, in its December 31, 1998, Opinion considered the previous testimony when reaching its decision that the appellee had failed to show a "need" for its towing services. In a thorough and articulate recitation of the factual evidence presented before it, the Board stated:

Mr. Freeman stated that the Police Department makes no recommendation as to "need," and recites only facts regarding their investigation of the applicant's operations. In assessing the need factor, Mr. Freeman referred to his notes. Factors that he considers in determining whether or not a license should be granted are:

— Geographic location of the tower, and the area of roadway system;

— Number of accidents on the roadway system;

— Proximity of other licensed towers in the area;

— Previous year's statistical data form towers;

— Growth potential;

— Average daily traffic counts in the general area serviced by the tower;

— Location where licenses had previously existed;

— The quality of the applicant's operation.

\* \* \*

[Mr. Freeman] stated that prior requests for a towing license had been denied on a regular overview basis to Berman's, using the previously stated eight criteria.

\* \* \*

[Officer Daneker] described his duties of securing a copy of the towing application filed by Berman's, following the eight criteria, and how his investigation is conducted. Es-

sentially, his findings reflected there was no need for a towing license at the time of his investigation.

In its analysis of whether there was adequate support for the Department's issuance of a towing license to the appellee, the Board explained:

> According to the testimony of Mr. Freeman, the report of the [County] Police authority was not considered in the decision making—only and exclusively the "need" expressed by the Maryland State Police was used in his "need" evaluation and determination. This was a departure from the prior practice of the permits department in assessing "need." *Previously, eight criteria had been established in the determination by the department in establishing need.* [The Board then listed each of the eight criteria]
>
> *This Board has,* on numerous occasions, *heard cases in which towing licenses had been denied based on the permits department consideration of the referenced criteria,* and failure of the respective tower's burden to satisfy the requirements as set forth above.
>
> \* \* \*
>
> The permit department severely departed from prior practice relied upon by previous applicants in applying for a towing license. This Board on recent occasions (one of which involved Berman's towing) upheld the decision of the permits department in the denial of a new license due to the lack of "need" based on the established criteria. *Based upon prior practices, these eight criteria have become established criteria in which the department has established the "need" factor, and upon which the towing companies have relied in filing for a towing license.*

(Emphasis supplied).

In the last analysis, all that was required of the Board was that it was not persuaded that a need existed for the additional towing license. That was the effect of its decision. We hold that the Board had a substantial basis for not issuing the

license. The circuit court, therefore, erroneously reversed the decision of the Board of Appeals.

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.**