800 A.2d 768

**JORDAN TOWING, INC.**

v.

**HEBBVILLE AUTO REPAIR, INC., Varsity Auto Repair, Inc., Windsor Service, Inc.**

**No. 121, Sept. Term, 2001.**

Court of Appeals of Maryland.

June 12, 2002.

Michael T. Pate (F. Vernon Boozer of Covahey, Boozer, Devan & Dore, on brief), Towson, for appellant.

Michael B. Sauer (Keith L. Powell, on brief), Towson, for appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

CATHELL, Judge.

The Baltimore County Department of Permits and Development Management (DPM) [1] granted a towing license to Jordan Towing, Inc., appellant. In response to the issuance of that license, Hebbville Auto Repair, Inc., Varsity Auto Repair, Inc., and Windsor Service, Inc., appellees, appealed the approval of appellant's towing license application to the County Board of Appeals of Baltimore County (Board of Appeals). The Board of Appeals reversed the decision of the DPM. Appellant sought judicial review in the Circuit Court for Baltimore County, which affirmed the decision of the Board of Appeals. Appellant filed a Notice of Appeal to the Court of Special

---

1. We note that sections of the Baltimore County Code referenced *infra* refer to the DPM as the "Department of Permits and Licenses." This was the former name of the DPM and it is still referred to as such in the Baltimore County Code provisions at issue in this case.

Appeals. We granted certiorari on our own motion prior to consideration by the Court of Special Appeals. *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.*, 367 Md. 722, 790 A.2d 673 (2002). Appellant presented the following questions:

"A. Did the Board of Appeals commit error in finding that Windsor Service, Inc., Hebbville Auto Repair, Inc., and Varsity Auto Repair, Inc. have standing to raise an Equal Protection challenge in this case?

B. Did the Board of Appeals commit error in concluding that the actions of the Department of Permits and Development Management were subject to an Equal Protection analysis?

C. Did the Board of Appeals commit error in its determination that the actions of the Department of Permits and Development Management violated the Equal Protection clause of the Fourteenth Amendment?"

In their brief to this Court, the appellees have presented the following responses:

"1. Do Hebbville, et al. have standing? Are Hebbville, et al. aggrieved persons? Has Jordan misstated the issue? Is the issue untimely raised?

2. Consistent with *Pollard's Towing,* is the County Board of Appeals finding (based on established criteria) that Jordan failed to prove need [entitled to] due deference under the narrow scope of judicial review of factual inferences and application of law to facts?

3. Is the County Board of Appeals interpretation reasonable, as a matter of statutory construction, that it is impermissible to utilize racial diversity and/or racial orientation in a service area to find a need for additional service?

4. Is the County Board of Appeals finding proper, on this record, that county issuance of the license conflicted with the Equal Protection Clause of the United States Constitution?

5. Does the license application comply in other respects with the county towing ordinance?"

■ We answer appellant's first question in the negative—appellees had standing before the Board of Appeals.

Section 24–225 of the Baltimore County Code, which states, "[a]ny person who is aggrieved by a decision of the department of permits and licenses shall have the right to file an appeal" conferred standing upon appellees to challenge, via an appeal to the Board of Appeals, the granting of appellant's towing license. Appellant contends that this independent basis for standing does not confer standing upon the appellees to raise a constitutional challenge to the granting of appellant's towing license.

The Circuit Court, in the case *sub judice,* stated:

"The protestants [appellees] clearly have demonstrated they have standing to pursue this action. As the other licensed towers in the district, the business that is presently divided between them will be reduced or diminished by decisions which affect the ability of other towers to be licensed in their district. It is clear that they have been disadvantaged by the decision to permit another tower to be licensed in their region. For this reason, standing has been adequately demonstrated."

■ We affirm this finding of the Circuit Court that appellees had standing before the Board of Appeals and the Circuit Court challenging the granting of appellant's license. At the administrative level appellees were "aggrieved" under the relevant Baltimore County Code section because their businesses are directly affected by the issuance of an additional towing license in the geographical area where they alone hold licenses. A party is aggrieved and there is standing if the party suffers some "special damage . . . differing in character and kind from that suffered by the general public." *Weinberg v. Kracke,* 189 Md. 275, 280, 55 A.2d 797, 799 (1947); *see Sugarloaf Citizens Assn. v. MDE,* 344 Md. 271, 686 A.2d 605 (1996); [2] *Inlet Associates v. Assateague House Condo. Assn.,*

---

2. In *Sugarloaf,* 344 Md. at 285–88, 686 A.2d at 613–14, this Court discussed that:

313 Md. 413, 545 A.2d 1296 (1988); *Becker v. Litty,* 318 Md. 76, 566 A.2d 1101(1989); *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A.2d 289 (1967). In *Sugarloaf,* 344 Md. at 295, 686 A.2d at 617, this Court discussed aggrievement and emphasized that standing does not depend on the type of issue raised or its likelihood of success and stated:

"Therefore, standing to challenge governmental action, and the merits of the challenge, are separate and distinct issues.... 'The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a ... court and not on the issues he wishes to have adjudicated'." [Citations omitted.]

For the reasons stated *supra* and under the facts of this case, appellees were proper parties to this action and had standing when they appealed the DPM's decision to the Board of Appeals.

We do not directly answer the remaining questions. We shall, however, affirm the decision of the Board of Appeals reversing the issuance of the towing license to appellant. We

---

"[There is] a distinction between standing to be a party to an administrative proceeding and standing to bring an action in court for judicial review of an administrative decision. Thus, a person may properly be a party at an agency hearing under Maryland's 'relatively lenient standards' for administrative standing but may not have standing in court to challenge an adverse agency decision. The requirements for administrative standing under Maryland law are not very strict....

. . .

"For a person or entity to maintain an action under the Administrative Procedure Act for judicial review of an administrative decision, the person or entity 'must both be a "party" to the administrative proceedings and be "aggrieved" by the final decision of the agency.'

"While the term 'aggrieved' is not defined in the Administrative Procedure Act, we have held that the statutory requirement that a party be ' "aggrieved" mirrors general common law standing principles applicable to judicial review of administrative agency decisions.' Accordingly, in order to be 'aggrieved' for purposes of judicial review, a person [must be] ... ' "... personally and specifically affected in a way different from ... the public generally." ' " [Citations omitted.]

hold that the Baltimore County Code provisions at issue in the case *sub judice* cannot be interpreted, *under the facts here present*, in such a way as to permit the granting of a towing license to appellant.[3]

## I.  Facts

### a.  The Towing Application Process

The case *sub judice* involves an application by appellant for a towing permit, which is regulated under the Baltimore County Code.[4] The provision regarding the license requirement reads in pertinent part:

> **"Sec. 24–226.  License required to engage in towing business; storage facilities required.**
>
> (a) It shall be unlawful for any person to engage in towing disabled vehicles from the scene of a motor vehicle accident occurring within the county without first having obtained a license from the department of permits and licenses to do so as hereinafter provided or during the suspension or revocation thereof."

The DPM is vested with the authority to determine whether to approve an application for a towing license in accordance with section 24–229, which states:

> **"Sec. 24–229.  Approval of new license towers; location requirements.**
>
> (a) New licensed towers shall be approved by the Department of Permits and Licenses based upon the need for additional service.  If the need does not exist, the applica-

---

**3.** The underlying validity of the county code's towing licensing provisions have not been properly challenged in the present case.  Accordingly, in this case, we are not concerned with addressing various aspects of the provisions such as constitutionality, monopolies, preemption, etc.

**4.** All sections hereafter cited are located in the Baltimore County Code, Title 24, Article 6, "Towing Businesses."  Its provisions generally explain the rights of, and the procedural requirements for, businesses engaged in the practice of towing vehicles on Baltimore County roadways.

tion will not be approved. The transfer of an existing license shall be treated in the same manner as a new license, and any such transfer shall be subject to all provisions applicable thereto."

While the Baltimore County Code does not specify the criteria [5] to be considered in determining the "need for additional [towing] service," [6] the typical practice within the DPM when a towing license application is submitted for a specific geographical area is to refer the application to the Baltimore County Police Department (BCPD) for investigation and review of the need for additional towers in a particular area.[7] The BCPD then reports back to the DPM and the DPM ultimately issues or declines to issue the license. If a license is issued, a towing business is assigned the specific geographical area within Baltimore County in which it can operate and is notified by the police whenever a disabled vehicle needs to be removed from an accident scene.

---

**5.** As discussed, *infra*, the criteria used by the DPM is a list of eight criteria adopted from the Baltimore County Police Department regulations.

**6.** In *Pollard's Towing, Inc. v. Berman's Body Frame & Mechanical, Inc.*, 137 Md.App. 277, 768 A.2d 131 (2001), the Court of Special Appeals, in a case factually similar to the case *sub judice* where the Board of Appeals reversed the granting of a towing license, discussed the use of the criteria by the DPM. In that case, it was stated:

"The testimony before the Board clearly established that the eight criteria had been consistently used for several years when determining whether, under County Code § 24–229, a need existed for towing services. Those criteria, although not formally published in any County manual or regulation, are common sense and logical factors to be considered when attempting to reach a conclusion as to whether a need for towing services exists."

*Id.* at 292, 768 A.2d at 139.

**7.** It is the submission of the application that triggers the DPM's and BCPD's consideration of need as interpreted under the Baltimore County Code. Typically, when submitting an application for a new towing license, the applicant attempts to prove a need for additional service within a specific area. Under the Baltimore County Code, in turn, the BCPD will consider the applicant's evidence of need when making its report for the DPM.

Unlike the Baltimore County Code, which does not define or clarify "need" in the code sections pertaining to new towers, the BCPD does utilize specific "need" criteria to assess the need for additional service when forming its report for the DPM. The "Need Criteria" memorandum issued to all of its precincts by the BCPD, and presumably available to applicants,[8] reads:

### "NEED CRITERIA [9]

"The term 'need' as presented in Section 24–229 of the Baltimore County Code specifies the Police Department's need for an additional tower in the applicant's area.

"When determining 'need', the following factors shall be considered by the Police Department's Towing Unit when processing an application [for] a Baltimore County Towing License.

"1.  The geographical location of the tower with respect to the heavily traveled roadways.

2.  The number of accidents with disabled vehicles on these heavily traveled roadways in the applicant's area.

3.  The proximity of other licensed towers, both in terms [of] miles and minutes between the applicant's location and the licensed towers location that are currently servicing the area.

4.  A history of the previous year; late response times and no response times for the licensed towers currently servicing the area. The number of years experience, number of trucks and number of complaints of the licensed towers currently servicing the area.

5.  The growth potential for the particular geographical area in which the applicant is located.

---

8.  It is not asserted by either party that the "Need Criteria" are unavailable to applicants.

9.  The parties use the term "criteria" in both singular and plural contexts. The word "criterion" appears to be the correct word in a singular context.

6. The average daily traffic count for the heavily traveled roadways in the applicant's area.

7. Whether or not the application is for a location where a tow license had previously been in existence.

8. The quality of the operation of the applicant, including the number of trucks, the number of years experience in towing, and whether or not the tower is in a position to furnish specialized services; such as heavy duty."

The criteria are facially race neutral. In the case *sub judice*, there is no contention otherwise.

It has been the longstanding practice of the DPM to interpret need as set forth in the Baltimore County Code by only using the same eight factors which are relied upon by the BCPD. The DPM has not, in the past, resorted to other definitions of need outside of the listed criteria of the BCPD.

### b. Appellant's Towing Application Process

On November 3, 1998, appellant first applied for a towing license in the Woodlawn area of Baltimore County where appellees in this case were already licensed to tow. In the ten years prior to appellant's application, no new towing licenses had been issued by Baltimore County and when appellant applied for his towing license there were no African–American towers licensed in Baltimore County.[10]

Appellant's application was reviewed by Mr. Eugene Freeman, the Chief of the DPM, and sent to the BCPD traffic management unit where it was reviewed by Officer Denker. Prior to appellant's application being submitted to the DPM, Mr. Freeman and Mr. Earl Jordan[11] discussed the issuance of towing licenses in Baltimore County. Mr. Freeman advised

---

10. The record reflects that there was no evidence of any previous application by an African–American and no direct evidence that the DPM had discriminated in the past.

11. Mr. Earl Jordan is the father of Mr. Jeffrey Jordan, the owner of the towing business that is appellant in the case *sub judice*.

Mr. Jordan about the eight provisions constituting the "Need Criteria" that would have to be considered and indicated that the Baltimore County Code had long been interpreted to require proof of a need for additional tow trucks to satisfy these criteria. Mr. Freeman also told Mr. Jordan that, as things stood, there was no need for additional tow trucks almost anywhere in Baltimore County. Mr. Jordan questioned whether there were any African–American towers in Baltimore County, and, if not, he questioned the fairness of the licensing policy. In response, Mr. Freeman stated, "[a]nd I gave a pause, and I thought, and I said, 'Frankly, no, I don't think it's fair; however, in order to remedy the situation, I think probably what has to be done is is [sic.] that we need to—there has to be a change in the Baltimore County [C]ode.' "

After further consideration of the Baltimore County Code and what he perceived to be a problem, Mr. Freeman concluded that because the DPM had the authority pursuant to section 24–229 to approve or disapprove licenses based upon "need," which is not specifically defined by the Baltimore County Code, he could determine need in other ways or define need beyond the criteria.

Therefore, to define need, Mr. Freemen departed from the criteria and turned to the definition of need in both *Black's Law Dictionary* and *Webster's Dictionary*. Based upon these expansive definitions, Mr. Freeman then concluded that need was not to be limited to the stated requirements, *i.e.,* the "Need Criteria" for the approval of additional licensed towers, but rather that need could be based on inclusiveness and diversity. Mr. Freeman acknowledged that the consideration of appellant's towing license was based on the sole fact that appellant was a minority owned business and that absent concerns for diversity, the license would not be approved because there would be no justification for an additional license pursuant to the criteria typically used.[12] On May 11,

_____

12. At this time, Officer Denker's report had been returned to the DPM and it stated that there was no need for an additional licensed tower in the geographical area appellant could serve.

1999, in order, allegedly, to be fair and inclusive and to promote diversity in light of Baltimore County's policy against any form of discrimination,[13] Mr. Freeman granted appellant's license application.

Following the issuance of the license to appellant, a timely appeal[14] was noted by appellants, existing licensed towers in the Woodlawn area, to the Board of Appeals. On June 31, 2001, the Board of Appeals issued an opinion and order reversing the DPM's approval of the license and denying appellant's license application. The Board of Appeals determined that the DPM was arbitrary, capricious and discriminatory in issuing appellant's license and found that the granting of the license violated the "Equal Protection clause." Appellant sought judicial review of the Board of Appeals' decision in the Circuit Court for Baltimore County. On July 7, 2001, the Circuit Court affirmed the decision of the Board of Appeals. Appellant then filed a Notice of Appeal with the Court of Special Appeals. As we have indicated, we granted certiorari on our own motion prior to this case being heard by the Court of Special Appeals.

## II. Standard of Review

In our recent case of *Gigeous v. ECI*, 363 Md. 481, 769 A.2d 912 (2001), Judge Harrell, writing for the Court, discussed the review of an administrative agency's decision:

---

13. Regarding a policy against any form of discrimination, Mr. Freeman referred to the provision of the Baltimore County Code that reads:
"**Sec. 24–221. Declaration of Policy.**
"For the purpose of protecting the general welfare and public interests of the community; safeguarding the public interests against fraud, *discrimination* ... the towing of a vehicle disabled by collision or other accidents shall be subject to supervision and administrative control in the county." [Emphasis added.]

14. The Baltimore County Code states:
"**Sec. 24–255. Rights to appeal.**
"Any person who is aggrieved by a decision of the department of permits and licenses shall have the right to file an appeal within thirty (30) days thereafter for a hearing in the matter by the board of appeals."

"We review an administrative agency's decision under the same statutory standards as the Circuit Court. Therefore, we reevaluate the decision of the agency, not the décision of the lower court. *Public Serv. Comm'n v. Baltimore Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691, 694–95 (1974). Moreover, in *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 650 A.2d 226 (1994), we stated generally that '[j]udicial review of administrative agency action is narrow. The court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency.' 336 Md. at 576–77, 650 A.2d at 230 (internal quotation marks omitted) (quoting *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978)); *see also Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene*, 330 Md. 433, 442, 624 A.2d 941, 945 (1993) ("Judicial review of agency fact finding is narrow in scope and requires the exercise of a restrained and disciplined judicial judgment." (Citing *Supervisor v. Asbury Methodist Home*, 313 Md. 614, 626, 547 A.2d 190, 195 (1988))).

"We expounded upon this doctrine in *Board of Physician v. Banks*, 354 Md. 59, 729 A.2d 376 (1999):

Despite some unfortunate language that has crept into a few of our opinions, a 'court's task in review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency.' ... Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.... Furthermore, the expertise of the agency in its own field should be respected.'

*Banks*, 354 Md. at 68–69, 729 A.2d at 381....

"We, however, 'may always determine whether the administrative agency made an error of law. Therefore, ordinarily the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and

(2) whether there was substantial evidence from the record as a whole to support the decision.' *Baltimore Lutheran High Sch. v. Employment Sec. Admin.*, 302 Md. 649, 662, 490 A.2d 701, 708 (1985). Regarding the substantial evidence test, we explained in *Baltimore Lutheran High School, supra:*

> That is to say, a reviewing court, be it a circuit court or an appellate court, shall apply the substantial evidence test to the final decisions of an administrative agency, but it must not itself make independent findings of fact or substitute its judgment for that of the agency.

*Baltimore Lutheran High Sch.*, 302 Md. at 662, 490 A.2d at 708. Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978) (internal quotation marks omitted) (quoting *Snowden v. Mayor and City Council of Baltimore*, 224 Md. 443, 448, 168 A.2d 390 (1961)). In *Baltimore Lutheran High Sch., supra*, we further explained:

> The scope of review is limited to whether a reasoning mind could have reached the factual conclusion the agency reached. In applying the substantial evidence test, the reviewing court should not substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken. The reviewing court also must review the agency's decision in the light most favorable to the agency, since decisions of administrative agencies are prima facie correct and carry with them the presumption of validity. Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.

*Baltimore Lutheran High Sch.*, 302 Md. at 662–63, 490 A.2d at 708 (citing *Bulluck*, 283 Md. at 512–13, 390 A.2d 1119); *see Motor Vehicle Administration v. Karwacki*, 340 Md. 271, 283–84, 666 A.2d 511, 516–17 (1995); *Liberty Nursing,*

330 Md. at 442–43, 624 A.2d at 945–46; *Bulluck,* 283 Md. at 512–13, 390 A.2d at 1124."

*Id.* at 495–97, 769 A.2d at 921–22 (footnote omitted) (alteration in original).

## III. Discussion

In the case *sub judice,* the Board of Appeals, the administrative agency whose decision is being reviewed, reached the proper result in that appellant's license should not have been granted. The record before the Board of Appeals establishes that the DPM did not apply the proper need standards as interpreted under the Baltimore County Code when granting appellant's towing license. The proper basic need standards for the DPM, or Mr. Freeman, to have applied when considering appellant's towing license should have been the "Need Criteria" detailed *supra.* This is how the Baltimore County Code need provisions have consistently been interpreted.[15] Therefore, the outcome of the case *sub judice* rests upon the error of the DPM in not applying the proper standards to appellant's towing license application. The Board of Appeals was correct in finding the actions of the DPM to be unlawful.

In *Pollard's, supra,* a towing license case arising out of Baltimore County, the intermediate appellate court recently and clearly indicated the proper standards to apply when issuing licenses to conduct towing operations in Baltimore County. The court in *Pollard's* discussed the "eight need criteria" and established that the criteria, even though unpublished in the Baltimore County Code,[16] are the standards to be used in a towing license case. Judge Moylan, writing for that court, specifically referenced the Board of Appeals' opinion in that case where the Board of Appeals noted *"based upon prior*

---

15. We do not address whether, under section 24–221 of the Baltimore County Code, racial or ethnic background, or gender diversity would be an appropriate consideration if two applicants of different races or genders were seeking permits and the criteria as to need had been satisfied prior to a consideration of diversity factors.

16. They have apparently been issued by the BCPD.

*practices, these eight criteria have become established criteria in which the department* [DPM] *has established the 'need' factor, and upon which the towing companies have relied in filing for a towing license." Pollard's,* 137 Md.App. at 294, 768 A.2d at 140.

There have also been towing cases before the County Board of Appeals for Baltimore County [17] where the Board of Appeals either reversed the DPM granting of a towing license or upheld the denial of a towing license because the need criteria were not satisfied.

In order for a new license to issue, it must first be established that any license issued results from, or would result from, the satisfaction of a need proven by an assessment of the eight need criteria related to population, growth potential, number of accidents, response times, complaints, etc. It is the submission of the application which triggers the DPM and, in turn, the BCPD to assess the need for additional towing services in that particular geographical area pursuant to the established "Need Criteria." Mr. Freeman acknowledged to Mr. Jordan, and in his testimony before the Board of Appeals, that these criteria have become established standards for the DPM to use when assessing the "need" factor under section 24–229, which states that "new licensed towers shall be approved by the department of permits and licenses based upon the *need* for additional service." (Emphasis added.)

The record that was before the Board of Appeals establishes that the license approval in the instant case was flawed from the start. Appellant, when presenting its license application to the DPM, based its claim of need not upon actual need for additional towers in Baltimore County, but solely upon its minority status as an African–American business

---

**17.** *See Berman Towing,* Case No. CBA–98–118 and *Hooes Towing, Inc.,* Case No. CBA–98–153. On appeal from the Circuit Court's review of the Board of Appeals' decision, *Berman Towing,* Case No. CBA–98–118 is styled as *Pollard's Towing, Inc. v. Berman's Body Frame & Mechanical, Inc.,* 137 Md.App. 277, 768 A.2d 131 (2001), which we reference throughout this opinion.

wanting to serve a district with a substantial African–American population currently without a minority-owned towing company and that this lack of minority participation was unfair. Thereafter, the record reflects that when appellant's application, basing need solely upon its minority status, was submitted to the DPM, Mr. Freeman stated that there was no need as traditionally interpreted. The only party initially involved in appellant's licensing application to apply the proper need standards was the BCPD. When appellant's application was submitted to the BCPD, Officer Denker's report not only summarized the facts bearing on need for additional service, but his report also stated that there were four existing towing companies making responses, nearly twenty tow trucks, zero complaints in the previous record year, and a small projection of population increase for the next decade. Then again at the hearing before the Board of Appeals, Officer Denker repeated that his facts and figures showed appellant did not meet the "Need Criteria" consistently applied in the past. The BCPD "Need Criteria" memorandum that was issued, and the evidence of BCPD's actual use of the criteria, establish that the BCPD has consistently interpreted the Baltimore County Code section's reference to need by the standards of the "Need Criteria."

The need criteria have been recognized by the intermediate appellate court in *Pollard's*, have been established as the applicable standards in past Board of Appeals' opinions, have been relied upon by previous applicants in applying for a towing license, have been consistently used by the BCPD when preparing reports for the DPM, and most importantly, have been accepted by the DPM by prior consistent practice when considering license applications.

■ The record establishes that Mr. Freeman decided to issue a license to appellant based solely upon his determination that the towers of Baltimore County should be diverse, and, therefore, need existed for a licensed minority applicant without regard for the established criteria. Mr. Freeman simply circumvented the standards. Ultimately, Mr. Freeman granted appellant's license based solely on appellant's race.

Mr. Freeman's focus on expansive definitions of the word "need" in two dictionaries ignores the long-standing interpretation of the provision used by the applicable administrative agencies.

We have previously indicated that, generally, an administrative agency should follow its own established rules, regulations and procedures. In *Maryland Transportation Authority v. King,* 369 Md. 274, 799 A.2d 1246 (2002),[18] Judge Eldridge, writing for the Court, quoted the Court of Special Appeals' unreported opinion (No. 420, Sept. Term 2000), where that court, quoting its prior case of *Hopkins v. Maryland Inmate Griev. Comm'n,* 40 Md.App. 329, 335, 391 A.2d 1213, 1216 (1978), said:

> "It is well established that rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force.... This rule has been recognized in federal and state jurisdictions and has become known as the '*Accardi* doctrine' since it was announced in *U.S. ex rel Accardi v. Shaughnessy,* 347 U.S. 260 [, 74 S.Ct. 499, 98 L.Ed. 681] (1954). There the Supreme Court vacated a deportation order of the Board of Immigration of Appeals because the Board and the Attorney [G]eneral failed to follow their own regulations."

*King,* 369 Md. at 282, 799 A.2d at 1250. For this Court, Judge Eldridge then stated:

> "In *Accardi v. Shaughnessy, supra,* 347 U.S. at 268, 74 S.Ct. at 504, 98 L.Ed. at 687, the Supreme Court of the United States held that an administrative decision is subject to invalidation because of the agency's '*failure to exercise* its own discretion contrary to existing valid regulations.' (Emphasis in original). Subsequently in a series of cases, the Supreme Court, relying on the *Accardi* case, has recognized a rule of federal administrative law that, with some excep-

---

18. We note that this case had not been filed at the time the parties submitted their briefs or made their oral arguments before this Court.

tions, an administrative agency is required to follow its own procedures or regulations. *See, e.g., United States v. Caceres,* 440 U.S. 741, 751 n. 14, 99 S.Ct. 1465, 1471 n. 14, 59 L.Ed.2d 733 (1979) (while a violation of agency regulations did not raise constitutional questions under the circumstances, '[i]t does not necessarily follow, however, as a matter of either logic or law, that the agency had no duty to obey them'); *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) ('Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required'); *Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957) ('[R]egulations validly prescribed by a government administrator are binding upon him as well as the citizen, and ... this principle holds even when the administrative action under review is discretionary in nature'). *But, cf. American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 538–539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970).

"The Court of Special Appeals has recognized or applied the *Accardi* doctrine in numerous opinions. *See, e.g., Anastasi v. Montgomery County,* 123 Md.App. 472, 491, 719 A.2d 980, 989–990 (1998); *G & M Ross v. License Commissioners,* 111 Md.App. 540, 543, 682 A.2d 1190 (1996); *Board of School Commissioners v. James,* 96 Md.App. 401, 421–422, 625 A.2d 361, *cert. denied,* 332 Md. 382, 631 A.2d 452 (1993); *Board of Education of Baltimore Co[unty] v. Ballard,* 67 Md.App. 235, 239–243, 507 A.2d 192 (1986); *Board of Education v. Barbano,* 45 Md.App. 27, 41–42, 411 A.2d 124, 131– 132 (1980); *Hopkins v. Maryland Inmate Grievance Commission,* 40 Md.App. 329, 335–338, 391 A.2d 1213, 1216–1217 (1978). The Court of Special Appeals has taken the position that, in situations where the *Accardi* doctrine is applicable, it does not matter whether · one was prejudiced by the failure of the agency to follow its procedures or regulations. *See, e.g., Board of Education of Baltimore Co[unty] v. Ballard, supra,* 67 Md.App. at 239 n. 2, 507 A.2d at 194 n. 2.

"Although this Court has not previously discussed the *Accardi* doctrine as such, or even cited *Accardi v. Shaughnessy, supra,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, it is clear that, at least to some extent, a similar doctrine is reflected in Maryland administrative law. Thus, the judicial review section of the Maryland Administrative Procedure Act provides that a reviewing court may 'reverse or modify the [administrative] decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision ... (iii) results from an unlawful procedure [or] (iv) is affected by any other error of law....' Code (1984, 1999 Repl.Vol.), § 10–222(h)(iii) and (iv) of the State Government Article.

"Moreover, numerous opinions of this Court have involved the review of agency action to determine if the agency complied with its regulations and required procedures. *See, e.g., Board of Physicians v. Levitsky,* 353 Md. 188, 206–207, 725 A.2d 1027 (1999) (An agency's violations of procedures which do not 'compromise the accused's opportunity for a full and fair hearing on the charge,' or which were not raised during the administrative proceedings, furnish no basis to invalidate the agency's decision); *Dept. of Correction* [Dept. of Public Safety & Correctional Services] *v. Howard,* 339 Md. 357, 369–370, 663 A.2d 74 (1995) (The failure of an agency to complete an investigation within the time set forth in a regulation did 'not reflect any prejudice ... that was caused by the delay,' and therefore the administrative decision was affirmed); *Ward v. Dept. of Public Safety,* 339 Md. 343, 353, 663 A.2d 66 (1995) (Where the suspension of an employee was not authorized by the agency's regulation, the suspension was vacated); *Heft v. Md. Racing Commission,* 323 Md. 257, 265, 592 A.2d 1110 (1991); *Resetar v. State Board of Education,* 284 Md. 537, 550, 399 A.2d 225, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979). In addition, we have recognized that, under some circumstances, mandamus or other traditional actions may lie to enforce administrative compliance with procedural requirements or duties. *Gisriel v. Ocean City*

*Elections Board*, 345 Md. 477, 496–500, 693 A.2d 757 (1997), *cert. denied*, 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998), and cases there cited; *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 17, 511 A.2d 1079 (1986)."

*Id.* at 284–87, 799 A.2d at 1252–53 (alterations in original).

Mr. Freeman knew of the past, consistent interpretation of need and, albeit perhaps well-intentioned, improperly departed from the past consistent practice of the DPM to apply this single, newly-created standard when faced with the new license application. Such a departure from past consistent interpretation and practice is a matter better addressed either by a legislative entity, or by the adoption of a regulation.[19]

As we have pointed out from the record, there was sufficient evidentiary support for the Board of Appeals' decision to reverse the decision of Mr. Freeman based upon the ground that the proper need standards were not applied. At the hearing before the Board of Appeals, there was significant testimony regarding the eight factors used by the BCPD in addressing the "need" criteria of section 24–229. Specifically, there was the testimony of Mr. Freeman himself that there was no need as traditionally interpreted, there was Officer Denker's report from his investigation showing no need for another licensed tower, and there were other witnesses who testified to the lack of need for additional towers in the area.

---

**19.** No challenge is made in the present case as to the validity of the creation of the need criteria and whether the legislature has properly delegated such criteria creating power to the respective administrative entity. *See Board of Liquor License Commissioners for Baltimore City v. Hollywood*, 344 Md. 2, 11, 684 A.2d 837, 842 (1996), where we stated:

"'[I]n determining whether a[n] ... administrative agency is authorized to act in a particular manner, the statutes, legislative background and policies pertinent to that agency are controlling.'... Notwithstanding this general trend, however, an agency may not take action 'which is inconsistent or out of harmony with, or which alters, adds to, extends or enlarges, subverts, impairs, limits, or restricts the act being administered.' A determination of the scope of an agency's powers, therefore, turns on the General Assembly's intent in empowering the agency and the statutory scheme under which the agency acts." [Citations omitted.] [Alterations in original.]

Therefore, there was no evidence on the record showing that actual need existed for an additional licensee in the Woodlawn area of Baltimore County, or in the county as a whole, for that matter. We hold that the Board of Appeals was correct when it found that "there is insufficient testimony or evidence to support the granting of a license solely on the basis of the fact that the owners of appellant are African-American." When the Board of Appeals stated that appellant's license could not be issued "solely" on race, it impliedly found the opposite—that the standard criteria had not been satisfied.

The Board of Appeals' interpretation of its own regulation or practice is owed deference. In *King,* discussed *supra,* Judge Eldridge, writing for the Court, detailed the deference owed to an agency's interpretation of its own regulation. He wrote:

" . . . [A] great deal of deference is owed to an administrative agency's interpretation of its own regulation. Judge Chasanow for this Court, in *Ideal Federal v. Murphy,* 339 Md. 446, 461, 663 A.2d 1272 (1995), set forth the principle as follows:

'In *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965), the Supreme Court of the United States noted that:

"When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.

\* \* \*

"When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."

'See also *First Gibraltar Bank, FSB,* 19 F.3d [1032] at 1047. Additionally, an agency's interpretation of an administrative regulation is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation."

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945).'

In *Md. Comm'n On Human Relations v. Bethlehem Steel*, 295 Md. 586, 592–593, 457 A.2d 1146 (1983), Judge Davidson for the Court explained:

'This Court has recognized that the interpretation of an agency rule is governed by the same principles that govern the interpretation of a statute. *See, e.g., Dorsey v. Beads*, 288 Md. 161, 176, 416 A.2d 739, 747 (1980); *Messitte v. Colonial Mortgage Serv. Co. Assocs., Inc.*, 287 Md. 289, 293, 411 A.2d 1051, 1053 (1980). More important, agency rules are designed to serve the specific needs of the agency, are promulgated by the agency, and are utilized on a day-to-day basis by the agency. A question concerning the interpretation of an agency's rule is as central to its operation as an interpretation of the agency's governing statute. Because an agency is best able to discern its intent in promulgating a regulation, the agency's expertise is more pertinent to the interpretation of an agency's rule than to the interpretation of its governing statute.'

For recent cases setting forth the principle that deference should be given to agency interpretations, *see, e.g., Division of Labor v. Triangle* [General Contractors], 366 Md. 407, 416–417, 784 A.2d 534 (2001); *Marzullo v. Kahl*, 366 Md. 158, 172–173, 783 A.2d 169 (2001); *State Ethics Commission v. Antonetti*, 365 Md. 428, 446–447, 780 A.2d 1154 (2001); *Adamson v. Correctional Medical Services*, 359 Md. 238, 266, 753 A.2d 501, 516 (2000); *Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999); *Lussier v. Md. Racing Commission*, 343 Md. 681, 696–697, 684 A.2d 804, 811–812 (1996)."

*King*, 369 Md. at 288–89, 799 A.2d at 1289.

## IV. Conclusion

We hold that the "Need Criteria" remain the applicable standards for need in respect to the issuance of a new towing

license in Baltimore County and that the DPM cannot go beyond this interpretation of need if the established criteria have not first been sufficiently satisfied. The Board of Appeals was legally correct to conclude that the DPM, using race alone as the sole need criterion, should not have granted appellant's towing license application and that its action was arbitrary and capricious. There was substantial evidence to support the Board of Appeals' decision on the ground that the proper need standards were not applied to this particular license application. The Circuit Court, therefore, properly affirmed the decision of the Board of Appeals.[20]

---

**20.** For our holding, we need not address the Board of Appeals' other finding that the conclusion of the DPM violated the Equal Protection clause of the Fourteenth Amendment. In *McCarter v. State,* 363 Md. 705, 712–13, 770 A.2d 195, 199 (2001), we stated:

" '[T]his Court adheres to "the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground." ' *Baltimore Sun v. Baltimore,* 359 Md. 653, 659, 755 A.2d 1130, 1133–1134 (2000), quoting *Telnikoff v. Matusevitch,* 347 Md. 561, 579 n. 15, 702 A.2d 230, 239 n. 15 (1997). *See, e.g., Harryman v. State,* 359 Md. 492, 503 n. 6, 754 A.2d 1018, 1024 n. 6 (2000); *Ashford v. State,* 358 Md. 552, 561, 750 A.2d 35, 40 (2000); *Thrower v. Support Enforcement,* 358 Md. 146, 149 n. 2, 747 A.2d 634, 636 n. 2 (2000), and cases there cited. This principle applies even if the non-constitutional ground was not raised by any party in the case. The 'appellate policy of avoiding unnecessary decision of constitutional issues gives rise to one of "a very limited number of circumstances [that] have been treated as ' "extraordinary" ' and thus within the exceptions to the requirement that an issue be raised in a certiorari petition, cross-petition, or order by the Court.' " *Professional Nurses v. Dimensions,* 346 Md. 132, 138–139, 695 A.2d 158, 161 (1997), and cases there discussed." [Alteration in original.]

*See Montgomery County v. Broadcast Equities, Inc.,* 360 Md. 438, 758 A.2d 995 (2000). *And see* the older case of *Foster v. State,* 297 Md. 191, 230, 464 A.2d 986, 1006 (1983) and the cases cited in Judge Eldridge's concurring opinion, including *Caplan Bros. v. Village of Cross Keys,* 277 Md. 41, 45–46, 353 A.2d 237, 240 (1976) ("[J]udicial restraint suggests that the issue of constitutionality not be addressed if the same result can be achieved on other grounds.") In *Commissioner of Labor & Industry v. Fitzwater,* 280 Md. 14, 19, 371 A.2d 137, 140 (1977), we previously noted that ("It is the established rule that courts do not decide constitutional issues if the case can be decided on other grounds.") *And see* Beth Goldman Adler, Gregory L. Lockwood & Gerald Darnell Roberson, *Survey: Developments in Maryland Law, 1987–88: VII. Labor & Law,* 48 Md. L.Rev. 730, 746 n. 151 (Spring 1989) ("courts should

462

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

refrain from deciding constitutional issues not essential to proper disposition of case") (quoting *Tauber v. Montgomery County*, 244 Md. 332, 337–38, 223 A.2d 615, 618–19 (1966)).